| | | |
|---|---|---|
| **QUINCY JONES** | * | IN THE CIRCUIT COURT FOR |
| 11 Pomona South | | |
| Pikesville, MD 21208, | * | MONTGOMERY COUNTY |
| | | |
| and | * | |
| | | |
| **DAE PARK** | * | |
| 1310 Beverly Ave. | | |
| Odenton, MD 21113, | * | Case No. 484731-V |
| | | |
| *on their own behalf and on behalf of* | * | |
| *all others similarly situated,* | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | |
| | * | |
| **PROSPER MARKETPLACE, INC.** | | |
| 111 Sutter Street, 22nd Floor | * | |
| San Francisco, CA 94104 | | |
| **Serve on:** | * | |
| Prosper Marketplace, Inc. c/o | | |
| CSC-Lawyers Incorporating Service Company | * | |
| 7 St. Paul Street, Suite 820 | | |
| Baltimore, MD 21202, | * | |
| | | |
| **PROSPER FUNDING, LLC** | * | |
| 2711 Centerville Rd., Suite 400 | | |
| Wilmington, DE 19720 | * | |
| **Serve on:** | | |
| Prosper Funding, LLC c/o | * | |
| CSC-Lawyers Incorporating Service Company | | |
| 7 St. Paul Street, Suite 820 | * | |
| Baltimore, MD 21202, | | |
| | * | |
| and | | |
| | * | RECEIVED |
| **VELOCITY INVESTMENTS, LLC** | | |
| 1800 Route 34 North, Bldg#4 | * | FEB 09 2021 |
| Wall, NJ 07719 | | |
| **Serve on:** | * | Clerk of the Circuit Court |
| CSC-Lawyers Incorporating Service Company | | Montgomery County, Md. |
| 7 St. Paul Street, Suite 820 | * | |
| Baltimore, MD 21202, | | |
| | * | |
| Defendants. | | |
| * * * * * * * | * | * * * * * * |

## Class Action Complaint and Demand for Jury Trial

## <u>Introduction</u>

1.     Plaintiffs Quincy Jones ("Mr. Jones") and Dae Park ("Mr. Park") (collectively "Plaintiffs" or "Class Representatives") on behalf of themselves and all others similarly situated, sue Defendants Prosper Marketplace, Inc. ("PMI"), its wholly owned subsidiary, Prosper Funding, LLC ("PFL") (collectively "Prosper"), and Velocity Investments, LLC ("Velocity").

2.     This is a class action by consumers seeking relief from the unlawful and abusive practices of Prosper – an unlicensed loan broker which has simply ignored Maryland credit and licensing laws, and engaged in an illegal predatory lending business in transactions with Class Representatives and members of the Class defined below (the "Class Members"). Prosper sold the illegal and uncollectible loan accounts of Class Representatives and the members of the Subclass defined below (the "Subclass Members") to debt collector Velocity – even though nothing was owed on those accounts from the beginning as a result of Prosper's blatant wrongdoing.

3.     Maryland law strictly prohibits the very type of scheme that Prosper has employed. Prosper's transactions with Class Members have violated Maryland law in numerous respects.

4.     For example, the Maryland Credit Services Businesses Act, Md. Code Ann., Com. Law § 14-1901 *et seq.* (the "MCSBA") requires loan brokers, like Prosper, to be licensed when arranging loans for Maryland consumer borrowers.

5.     This is no secret. In *CashCall, Inc. v. Maryland Com'r of Fin. Regulation*, 448 Md. 412, 439 (2016) ("*CashCall*"), the Maryland Court of Appeals confirmed that the longstanding terms of the MCSBA apply to loan brokers like Prosper. *CashCall* addressed a lending set-up virtually identical to Prosper's and explained why Maryland law required a loan broker like Prosper to be licensed.

6.     Indeed, Prosper's competitors – like LendingClub Corporation, Avant of Maryland,

2

LLC, and Upstart Network, Inc. – are licensed by Maryland's Commissioner of Financial Regulation and have been for years. Prosper, however, is not, and has never been licensed.

7.      Maryland's Legislature has imposed harsh consequences for conducting a brokering business like Prosper's in violation of the law. If a loan broker is not licensed, it may not collect or retain any money from its customers.

8.      Yet Prosper repeatedly flouted and disregarded Maryland law, and arranged consumer loans for Class Representatives and each Class Member in return for substantial compensation, frustrating the protections enacted by the General Assembly, evading regulatory oversight, damaging Class Representatives and Class Members, and obtaining an unfair advantage over its licensed and regulated competitors in the process.

9.      In addition, Prosper routinely and uniformly violated the Maryland law which Prosper elected, in writing, to govern its transactions with Class Representatives and Class Members – the Maryland Credit Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law §§ 12-1001 *et seq*. ("CLEC").

10.     CLEC also requires a license to make a loan, which, once again, Prosper does not have.

11.     Moreover, CLEC §12-1023(b) explicitly prohibits Prosper from acting as a borrower's agent in forming or executing promissory notes. Yet in each and every transaction of Plaintiffs and the Class Members, Prosper ignored this prohibition, acted as an "attorney-in-fact" for the borrower, and illegally signed the promissory note with the borrower's name.

12.     Prosper's conduct, as more fully described below, violated not only the MCSBA, CLEC and Maryland licensing laws, but also the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §13-101 *et seq*. (the "CPA"), the Maryland Consumer Debt Collection Act, Md. Code Ann., 14-201 *et seq*. ("MCDCA"), and the common law.

3

13.     Due to Prosper's numerous violations of the law, discussed in more detail below, Prosper was never entitled to collect any money from Plaintiffs or any Class member.

14.     Although Prosper assigned the loan accounts of Plaintiffs and the Subclass Members to Velocity, Prosper could not assign any rights to Velocity which it did not have. Prosper had no right to collect any money from Plaintiffs or any Class Member, and Velocity, as Prosper's assignee, has no such right either.

15.     Nevertheless, Velocity has sought to collect and collected sums from Class Representatives and Class Members in violation of the law.

16.     As a result of the facts alleged in this Complaint, Class Representatives and each Class Member are entitled to a declaration that Maryland law requires Prosper to be licensed, and that Defendants were never entitled to collect any amounts from Class Representatives and Class Members in connection with their transactions with Prosper, under Maryland's Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-401 *et seq*.

17.     Class Representatives and each Class member are also entitled to recover actual and punitive damages under the MCSBA §14-1912.

18.     Class Representatives and each Class member are also entitled to recover statutory damages under CLEC §12-1018(a)(2) and (b).

19.     In addition, Defendants must return all payments made on the Prosper loans of Class Representatives also included provisions purporting to require arbitration of claims, along with and Class Members within the applicable statute of limitations, under the CPA and the MCSBA, and in *assumpsit* for money had and received. Defendants must also disgorge all profits from their illegal scheme in restitution for unjust enrichment.

20.     Because Defendants' activities in Maryland were form-driven, and violate the law in

materially uniform ways in the transactions of the Plaintiffs and the numerous other Class members, this lawsuit is well-suited for class action treatment.

## Parties

21.     Mr. Jones and Mr. Park are each natural persons who are residents and citizens of the State of Maryland, and who were residents of the State of Maryland at the time they registered in Maryland for a loan from Prosper.

22.     PMI is a Delaware corporation with its principal place of business in California.

23.     PFL is a Delaware limited liability company with its principal place of business in Utah.

24.     PFL is a wholly owned subsidiary of PMI, and PFL and PMI conspired together to undertake each of the actions described in this Complaint, and each aided and abetted the conduct of the other in undertaking the actions described in this Complaint. PFL has no employees, and undertakes all of its activities through PMI. Each and every action of PFL alleged in this Complaint is also an action undertaken by PMI.

25.     Velocity is a Delaware limited liability company with its principal place of business in New Jersey.

## Jurisdiction and Venue

26.     This Court has subject-matter jurisdiction over this case pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 1-501 and 4-402(e)(2).  This Court has personal jurisdiction pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 6-102 and 6-103(b), as each of the Defendants transacts business and performs work and service in the State of Maryland, contracts to supply services in the State of Maryland, and regularly does and solicits business and engages in other persistent courses of conduct in the State of Maryland, including the business described in this Complaint.

27.     Venue is proper in this Court under Md. Cts. & Jud. Proc. Code Ann. §§ 4-402(e)(2)

and 6-201, as the amount in controversy in this case exceeds $15,000.00 and because each of the Defendants carries on a regular business and habitually engages in vocation in Montgomery County, Maryland. Among other things, each Defendant directs its activity described in this Complaint to persons including residents of Montgomery County, Maryland.

## **Factual Allegations for Individual and Class Relief**

### **Prosper's Business**

28.     Prosper brokered personal loans to Class Representatives and each Class Member, in exchange for compensation, but Prosper has no license to do so under Maryland law.

29.     Prosper advertises that it offers access to personal consumer loans to Maryland consumers.

30.     Prosper's core business in Maryland in its transactions with Class Representatives and Class members was marketing and arranging loans through media outlets, including the internet.

31.     Prosper's advertisements directed Class Representatives and Class Members to Prosper's website, where Class Representatives and Class Members obtained loan application forms and instructions on how to complete those forms.

32.     Prosper provided a telephone number that Class Representatives and Class Members could call to obtain assistance in filling out the website's loan application.

33.     Prosper's form adhesion loan "agreement" documents included language permitting Prosper to, within its sole discretion and for any reason or no reason, change any of the terms of any of its "agreements" with Class Representatives and Class Members, at any time, without any advance notice.

34.     Prosper's form adhesion loan documents included a written election of CLEC to govern its transactions with Class Representatives and each Class Member.

35.     Prosper's form adhesion loan documents included provisions stating that Class Representatives and each Class Member gave Prosper a power of attorney to sign a promissory note at some time in the future, for the Class Representatives and each Class Member, only if Prosper deemed the loan worthy of originating and funding, in its sole discretion.

36.     In the transactions of Class Representatives and each Class member, the power of attorney provisions were enforced, and PMI, acting on behalf of WebBank, signed a promissory note in the name of the borrower as the purported "attorney-in-fact" of the borrower, in connection with the formation and execution of the note.

37.     Neither Class Representatives nor any Class Member personally signed any promissory note in connection with any Prosper loans.

38.     The loans to Class Representatives and Class Members were branded as "Prosper" loans, and involved "Promissory Notes" which had a "Prosper" heading and bore a "Prosper Marketplace, Inc." copyright. However, the "Promissory Notes" in Class Representatives' and Class Members' transactions were originated in the name of a state-chartered bank, WebBank. WebBank had agreed with Prosper, in advance of funding the "Prosper"-branded loans for Class Representatives and Class Members, that Prosper would advertise and market for these loans, that Prosper would handle all of the work necessary to originate the loans, would service the loans after origination, and that each of these loans would be sold to Prosper promptly after origination.

39.     Each Class Member loan was sold to Prosper, under its pre-existing agreement with WebBank, shortly after origination, generally within days after the loans were funded by WebBank.

40.     Prosper managed all of the operations relating to the submission of loan applications by Class Representatives and each Class Member and the making of those loans, in exchange for a fee.

41.     Prosper processed all loan applications from Class Representatives and each Class

Member to determine whether the Class Representatives and each Class Member met eligibility criteria for the loan, responded to all inquiries regarding the loan origination and application process, delivered all documents to Class Representatives and Class Members in the course of the loan origination and application process, and maintained all documents pertaining to the loans to each Class Representative and Class Member.

42.     Prosper, in Class Representative and each Class Member's transaction, also conducted credit risk assessment and loan underwriting.

43.     Prosper determined that Class Representative and each Class Member satisfied the criteria required for a loan, and determined the amount of each loan.

44.     However, Prosper represented to Class Representative and each Class Member that the loan would be made by WebBank. Under Prosper's oversight and Prosper's contracts with WebBank, WebBank provided an extension of credit to each Class member at Prosper's request, in the amount requested by Prosper.

45.     Prosper represented to each Class Representative and Class Member that they would have to pay WebBank a non-refundable origination fee from the proceeds of their loan.

46.     But Prosper had agreed, in advance, to collect all payments, interest and fees due on the loans to Class Representatives and each Class member.

47.     The purchase price Prosper paid for the purchase of Class Representatives' and each Class Member's loan included the total amount of the loan actually received by the borrower, plus the origination fee paid by the borrower, plus accrued interest. Prosper purchased the loans from WebBank before Class Representatives or any Class Member had made any payments on the loans. Then Prosper, not WebBank, collected all sums – including the origination fee – from Class Representatives and each Class Member. Prosper also collected interest from each Class

Representative and Class Member which was calculated based on including the "origination fee" as part of the principal amount of the loan. However, the origination fee was, in fact, interest. By collecting interest calculated on interest, Prosper compounded the interest on Class Representatives' and each Class Member's loan, although Prosper represented to Class Representatives and Class Members that it was collecting only simple interest. Prosper's representation that it was collecting "simple interest" from Class Representatives and Class Members was false.

48.     In addition, in each Class Member's transaction, Prosper obtained a transaction fee from WebBank in return for facilitating the origination of the Class Member's loan. Prosper determined the exact amount of these "transaction fees" that it would be paid. These "transaction fees" were then paid to Prosper based upon the amount of the loan originated. These transaction fees constituted between 1% and 5% of the original principal balance of each loan, and on average totaled between 4 and 4.53% of the amount of the loan originated. These "transaction fees" constituted a portion of the origination fees in Class Representatives' and each Class Member's transaction, and were ultimately paid by Class Members, with interest, through each of their periodic payments on their loans.

49.     Prosper also serviced and administered each loan to each Class member. This servicing and administration included statementing, payment processing, collections customers service, refunds and adjustments, customer disputes, and other services ordinary and customary in the servicing of installment loans. In addition to the other amounts it received in connection with Class Members' loans, Prosper received servicing fees as compensation for servicing Class Members' loans. These servicing fees were calculated as a portion of the interest charges for each Class Member's loan.

50.     Prosper undertook to recover and collect the maximum payment of interest and

9

principal possible from Class Members.

51.     Class Members never paid any loan payments, fees, or payments of any nature to WebBank in connection with the loans arranged by Prosper, but, instead, made all payments to Prosper, unless and until their loans were "charged off" and sold at a discount to Velocity or another debt collector, and Class Members thereafter made payments to Prosper's assignee debt collector.

52.     The only contact Class members had with WebBank in connection with their loans through Prosper was WebBank's deposit of money into their bank account at the direction, and under the supervision, of Prosper.

53.     In exchange for Prosper's role in assisting Class Representatives and Class Members to obtain the aforementioned loans, Prosper received, through contracts with WebBank, the exclusive right to collect all payments of principal, interest and fees, including the origination fee. This arrangement rendered Prosper the *de facto* lender; the true lender. WebBank never received payment of the origination fee from the Class Representatives or Class members, Prosper did. Prosper's reason for existence was to profit by purportedly providing advice and assistance to consumers, including Class Representatives and Class Members, in obtaining loans nominally from WebBank so that Prosper would receive, in reciprocation, the legal right to receive payments from consumers.

54.     This arrangement has been a lucrative business for Prosper.

55.     Prosper provided each Class Representative and Class Member with advice or assistance in the obtention of an extension of credit by others, and was compensated for doing so.

56.     Not only did Prosper broker the Class Representatives' and Class Members' loans without a license, Prosper *de facto* brokered the loans to itself, deceptively disguising the loans as legitimate bank loans.

57.     Although the loan proceeds for the Class Members' loans were purportedly drawn from

WebBank, Prosper exerted control and ownership over those loans. Prosper carried out all interactions with the Class Representatives and Class Members, accepted the ultimate credit risk, collected and pocketed the finance charges and fees, and owned and controlled the branding of the loans, which were only available through its website. Prosper was in fact the primary lender, creditor and collector in the loans that it made to each Class Representative and Class Member.

**The Two Prosper Entities Conspired to Conduct Illegal Activity**

58.     Prosper's unlawful conduct described in this Complaint was the result of a conspiracy involving both PFL and PMI.

59.     PFL and PMI entered into multiple agreements under which the two entities conspired, agreed, and aided and abetted the illegal conduct of the other.

60.     In committing the actions causing injuries and damages to Class and Subclass Members, PFL and PMI confederated with other persons, including each other, by agreement or understanding. PFL and PMI's agreements and understandings with each other included agreements allocating responsibility among PFL and PMI for each of the acts of Prosper alleged in this Complaint – including but not limited to marketing for loan accounts, originating loan accounts, taking ownership of loan accounts, servicing loan accounts, and selling loan accounts.

61.     In furtherance of this conspiracy, PFL and PMI each committed numerous unlawful acts, and used unlawful and tortious means to accomplish other acts.

62.     Among other things, and without limitation, PMI marketed for loan accounts which were represented to Class Representatives and Class Members as accounts with PFL, PMI originated unlawful loan accounts which were represented to Class Representatives and Class Members to be accounts with PFL, and PMI signed the promissory notes for those loan accounts, unlawfully and purportedly binding Class members to illegal and predatory lending transactions

with PFL. PMI serviced the unlawful loan accounts it originated for PFL and collected money for PFL from Class Representatives and Class Members. PMI acted as the agent of PFL in connection with the origination, servicing, and purchasing and sales of the Class Representatives' and Class Members' loan accounts. By undertaking these acts and others, PMI provided substantial assistance, aid and encouragement to PFL in connection with PFL's tortious actions toward Class Representatives and Class Members.

63.     For PFL's part, among other things and without limitation, PFL contracted and agreed with PMI that PMI would market for loan accounts which were represented to Class Representatives and Class Members as accounts with PFL, that PMI would originate unlawful loan accounts which were represented to Class Representatives and Class Members to be accounts with PFL, and that PMI would sign the promissory notes for those loan accounts, unlawfully and purportedly binding Class members to illegal and predatory lending transactions with PFL, that PMI would service the unlawful loan accounts it originated for PFL, and that PMI would collect money for PFL from Class Representatives and Class Members. PFL further contracted and agreed that PMI would act as the agent of PFL in connection with the origination, servicing, and purchasing and sales of the Class Representatives' and Class Members' loan accounts. By undertaking these acts and others, PFL provided substantial assistance, aid and encouragement to PMI in connection with PMI's tortious actions toward Class Representatives and Class Members.

64.     As a result of the conspiracy, Class Representatives and Class Members sustained the actual legal damages alleged herein.

65.     PFL and PMI each had actual knowledge of the wrongful conduct perpetrated by the other in their dealings with the Class Representatives and Class Members, and of the role each played in furthering that conduct.

66.     In its dealings with Class Representatives and Class Members, PMI was acting at all times relevant to the allegations contained in this Complaint as the agent of PFL and/or WebBank.

67.     When perpetrating the acts alleged herein causing injury or damages to Class Representatives and Class Members, PMI and the employees and representatives and agents of PMI committed those acts within the scope of the employment or agency, and when performing services for which he or she or it had been engaged, and when acting in furtherance of PFL's and/or WebBank's interests.

68.     As a consequence, Plaintiffs and the Class and Subclasses have sustained the losses and damages described herein

69.     Prosper, including both PFL and PMI, leased the association with WebBank in furtherance of a conspiracy to perpetrate their unlawful lending and credit services business scheme and to try to circumvent state laws, like Maryland's.

**Prosper Does Not Have Any License to Conduct Its Business In Maryland**

70.     Prosper does not have any license to conduct its credit services and lending business in Maryland, and has never had any license to conduct its credit services and lending business in Maryland.

71.     However, Maryland law requires Prosper to be licensed by the Commissioner of Financial Regulation to conduct its credit services and lending business in Maryland. For example, both the MCSBA and CLEC require Prosper to have licenses which it does not have and has never had.

**Prosper Violated the MCSBA in Class Member Transactions**

72.     Prosper, including both PFL and PMI, is a "credit services business" under the MCSBA §14-1901(e)(1)(ii).

73.     Prosper violated numerous mandates of the MCSBA in its dealings with Class members.

74.     Prosper received money or other valuable consideration from Class members when it had not secured a license from the Maryland Commissioner of Financial Regulation under Title 11, Subtitle 3 of the Financial Institutions Article, in violation of the MCSBA § 14-1902(1).

75.     Prosper received money and valuable consideration solely for the referral of Class members to a credit grantor when the credit extended to the Class members was substantially on the same terms as those available to the general public, in violation of MCSBA §14-1902(2).

76.     Prosper made and used false and misleading representations in the offer and sale of the services of Prosper, in violation of MCSBA §14-1902(4). Among other things, Prosper represented to each Class member that Prosper could be appointed as the Class member's attorney-in-fact to sign a promissory note for the Class member, and enforced that representation, when the Maryland law Prosper elected to govern each Class member's transaction forbids doing so. In addition, Prosper represented that Class members would have no opportunity to rescind their loans after funding, even though Maryland law required Prosper to provide a notice of cancellation which Class members could use to rescind their loans. In addition, Prosper represented that the origination fees in Class Representatives' and Class Members' transactions were non-refundable when, in fact, they were refundable under Maryland law. In addition, Prosper represented that the loans to Class Representatives and Class Members carried simple interest, when they each in fact included compound interest.

77.     Prosper engaged, directly or indirectly, in acts, practices, and courses of business which operated as a fraud or deception on Class members in connection with the offer or sale of the services of a credit services business, in violation of the MCSBA § 14-1902(5). Among other things, Prosper represented to each Class member that Prosper could be appointed as the Class member's

14

attorney-in-fact to sign a promissory note for the Class member, and enforced that representation, when the Maryland law Prosper elected to govern each Class member's transaction forbids doing so. In addition, Prosper represented that Class members would have no opportunity to rescind their loans after funding, even though Maryland law required Prosper to provide a notice of cancellation which Class members could use to rescind their loans. In addition, Prosper represented that the origination fees in Class Representatives' and Class Members' transactions were non-refundable when, in fact, they were refundable under Maryland law. In addition, Prosper represented that the loans to Class Representatives and Class Members carried simple interest, when they each in fact included compound interest.

78.     Prosper never provided to Class Representatives or any Class Member any of the disclosures required by the MCSBA §14-1906, and never provided Class Representatives or any Class Member the "NOTICE OF CANCELLATION" required under that section.

79.     Prosper materially and willfully misrepresented to Class Representatives and each Class Member that they had no right to rescind any loans after the loans were made, when the MCSBA affirmatively required Prosper to disclose to Class Representatives and each Class member that they could, in fact, rescind. That misrepresented information is required to be disclosed by the MCSBA. That information is also material to establishing Prosper's liability under the MCSBA. Prosper's false statement that the Class Members' loans could not be rescinded was a trick and contrivance intended to prevent Class Members from knowing or exercising their rights. By representing that loans could not be rescinded, and by failing to disclose the notice of cancellation which the MCSBA required Propser to disclose to Class Representatives and each Class Member, Prosper concealed Class Members' rights to rescind their loans and concealed Prosper's violations of the MCSBA. Prosper's misrepresentation of Class Members' rights and concealment of its violations of the

MCSBA was, at least, in reckless disregard of its obligations under the law. Prosper intentionally represented that Class Members' loans could not be rescinded, when they could; it intentionally did not provide legally required cancellation notices, and it concealed its wrongdoing and Class Representatives and Class Members' rights. Class Representatives and Class Members did not discover these misrepresentations and concealments until, at least, early 2021.

**Prosper Violated CLEC in Each Class Member Transaction**

80.     In each Class Member Transaction, Prosper made a written election of CLEC in the agreement, note, or other evidence of the loan.

81.     Although CLEC § 12-1023 flatly forbids any provision by which a person acting on behalf of a holder of the agreement, note, or other evidence of the loan in a consumer transaction is treated as an agent of the borrower in connection with its formation or execution, Prosper included, in each Class Member's transaction, just such a provision.

82.     In particular, in Prosper's documents for Class Representatives' and each Class Member's transaction, Prosper included provisions stating that PMI, acting on behalf of WebBank and PFL, was treated as the Class Representatives' and each Class Member's agent in connection with signing the promissory note in the transaction.

83.     Prosper enforced, in Class Representatives' and each Class Member's transaction, this prohibited provision. In particular, PMI acted as each Class Member's purported "attorney-in-fact" agent in signing the promissory note in the transaction, and proceeded to use the promissory note that Prosper signed to collect payments on its own behalf from Class Representatives and each Class Member.

84.     At the same time, and in the same documents, Prosper referred to PFL, PMI and WebBank, collectively, as "we," and repeatedly stated that PMI was acting as an agent of both

16

WebBank and PFL in connection with the Class Representatives' and Class Members' transactions.

**Prosper Was Never Entitled to Collect Any Money from Class Members Due to Its Illegal Activity**

85.     In Class Representatives' and each Class Member's transaction, Prosper elected CLEC to govern the transaction, and yet Prosper then immediately violated CLEC by acting as agent for the Class member in connection with the formation and execution of the promissory note. As a result, no promissory note was formed, and Prosper was never entitled to collect any money from any Class Member in connection with the legally non-existent note.

86.     Moreover, Prosper was not licensed as required by the MCSBA. Accordingly, it was prohibited from receiving any money or valuable consideration from Class Representatives or any Class Member under the MCSBA §14-1902(1).

87.     Furthermore, Prosper's purported contracts for services with Class Representatives and each Class Member did not comply with the MCSBA. Accordingly, the purported contracts were void and unenforceable under the MCSBA § 14-1907(b), and Prosper was never entitled to enforce any terms of any of those purported contracts or collect any money from Class Representatives or any Class Member in connection with those purported contracts.

88.     A credit services business license is subject to the licensing and investigatory provisions of the Maryland Installment Loans – Licensing Provisions, Md. Code Ann., Fin. Inst. §§11-301 *et seq.*, which require a license before Prosper could make any loans to Class Representatives or Class Members. Prosper's lack of the required license means it never had the right to collect any money from Class Members.

89.     In addition, a credit services business license is subject to the provisions of the Maryland

Consumer Loans – Licensing Provisions, Md. Code Ann., Fin. Inst. §§ 11-201 *et seq*. For that reason, as well, Prosper was never entitled to collect any money from Class Representatives or Class Members.

90.     In addition, CLEC governed each Class Member transaction, but CLEC §12-1015 required Prosper to be licensed by the Commissioner in order to make a loan under CLEC. Prosper's failure to obtain the required license means it was never entitled to collect any money from Class Representatives or Class Members.

91.     Prosper was not licensed as required by Maryland law, the statutes requiring Prosper to be licensed are regulatory in nature for the protection of the public, rather than merely to raise revenue, and permitting Prosper to collect money from Class Members is against public policy.

92.     Prosper never had any right to collect money from Class Representatives or Class Members, as a result of Prosper's illegal, unlicensed activity.

**Prosper Assigned Subclass Members' Loan Accounts to Velocity**

93.     Prosper's debt-collector assignee Velocity is not, and was never, entitled to collect money from Class Representatives or any Subclass Members based on loan accounts, as a result of Prosper's illegal, unlicensed activity.

94.     Velocity is a debt buyer company, which purchases debt charged off as uncollectible, at a pennies-on-the-dollar discount, and then attempts to collect the full "face value" of that debt.

95.     Prosper claimed to sell to Velocity the right to collect money from Class Representatives and Subclass Members whose accounts Prosper had "charged-off" as uncollectible.

96.     However, Prosper never had any right to collect any amounts from Class Representatives or any Subclass Members.

97.     The rights Prosper claimed to be selling to Velocity to collect amounts from Class

Representatives and Subclass Members were nonexistent.

98.    Velocity has no right to collect any amounts from Plaintiff or any Subclass Member in connection with their Prosper transactions.

### Class Representatives' Experiences

**Mr. Jones**

99.    On February 12, 2015, Mr. Jones received a loan with a face value of $15,000.00 through Prosper.

100.    $750 was deducted from Mr. Jones' loan proceeds as an "origination fee" before Mr. Jones received any money from the loan.

101.    Prosper's form adhesion documents for Mr. Jones' loan included a written election for CLEC to govern the loan.

102.    Prosper's form adhesion documents for Mr. Jones' loan also included multiple provisions giving Prosper the right to unilaterally change any of its agreements with Mr. Jones, at any time, without advance notice or an opportunity for Mr. Jones to reject any changes.

103.    Prosper's form adhesion documents for Mr. Jones' loan included provisions stating that PMI was acting on behalf of PFL and WebBank, and that Mr. Jones was required to authorize both PFL and PMI to act as Mr. Jones' attorney-in-fact to sign a promissory note for the loan.

104.    PMI acted on behalf of WebBank and PFL in Mr. Jones' transaction, and signed the promissory note for Mr. Jones as Mr. Jones' purported agent.

105.    Mr. Jones never signed a promissory note in his Prosper transaction.

106.    Mr. Jones paid more than $18,296.00 to Prosper, including interest, costs, fees and other charges.

107.    Yet Prosper claims that Mr. Jones owes even more. It claims that it sold Velocity the

right to collect more than $1,367.00 from him in addition to what he has already paid.

108.    Velocity has filed a lawsuit against Mr. Jones demanding that the Court force Mr. Jones to pay more than $1,367.00 to Velocity on account of Prosper's illegal activity.

**Mr. Park**

109.    On June 8, 2017, Mr. Park received a loan with a face value of $15,000.00 through Prosper.

110.    $750 was deducted from Mr. Park's loan proceeds as an "origination fee" before Mr. Park received any money from the loan

111.    Prosper's form adhesion documents for Mr. Park's loan included a written election for CLEC to govern the loan.

112.    Prosper's form adhesion documents for Mr. Park's loan also included multiple provisions giving Prosper the right to unilaterally change any of the terms of any of its agreements with Mr. Park, at any time, without advance notice or an opportunity for Mr. Park to reject any changes.

113.    Prosper's form adhesion documents for Mr. Park's loan included multiple provisions stating that that PMI was acting on behalf of PFL and WebBank, and that Mr. Park was required to authorize both PFL and PMI to act as Mr. Park's attorney-in-fact to sign a promissory note for the loan.

114.    PMI acted on behalf of WebBank and PFL in Mr. Park's transaction and signed the promissory note for Mr. Park as Mr. Park's purported agent.

115.    Mr. Park never signed a promissory note in his Prosper transaction.

116.    Mr. Park has paid thousands of dollars to Prosper, including interest, costs, fees, and other charges.

117.    Yet Prosper claims that Mr. Park owes even more. It claims that it sold Velocity the right

to collect more than $14,282.00 from him in addition to what he has already paid.

118.     Velocity has filed a lawsuit against Mr. Park demanding that the Court force Mr. Park

to pay more than $14,282.00 to Velocity on account of Prosper's illegal activity.

**Class Action Allegations**

119.     Class Representatives sue on behalf of themselves and the Class of similarly situated

persons defined below:

> All borrowers who obtained a consumer loan through Prosper
>
> where each and every one of the following requirements are met:
>
> a)   The borrower registered with Prosper in Maryland and was
> a Maryland resident at the time of registration;
>
> b)   The agreement, note, or other evidence of the loan included
> a written election of the Maryland Credit Grantor Closed End
> Credit Provisions, Md. Code Ann., Com. Law §§12-1001 et seq.
> ("CLEC");
>
> c)   The loan was originated in the name of WebBank under an
> advance agreement that the loan would be sold to Prosper after
> origination;
>
> d)   PMI signed the promissory note in the transaction on
> WebBank's behalf with the representation that it was the "attorney-
> in-fact" of the borrower; and,
>
> e)   The borrower made one or more payments to Prosper on
> the loan.

120.     Class Representatives sue on behalf of a Subclass of the following Class Members:

All Class Members whose Prosper loan accounts were assigned

to Velocity.

121.    Excluded from the Class and Subclass are all employees, officers and directors of Defendants and their parent or subsidiary companies and predecessors and successors, and assigns, and all employees of the Court, and all persons in transactions where 1) the subject account was originated more than three years prior to the filing of this Complaint; and, 2) the subject account was satisfied more than six months prior to the filing of this Complaint; and, 3) no payments have been made on the subject account within the past three years.

122.    The Class and Subclass, as defined above, are identifiable.  The Class Representatives are members of the Class and Subclass. The Class and Subclass are so numerous that joinder of all members is impracticable.

123.    There are questions of law and fact which are not only common to the members of the Class but which predominate over any questions affecting only individual Class members.  The common and predominating questions include, but are not limited to:

      a.   Whether Prosper acted as a credit services business under the MCSBA in Class Members' transactions;

      b.   Whether Prosper failed to make any of the disclosures required by the MCSBA §14-1906;

      c.   Whether Prosper was required to be licensed with the Maryland Commissioner of Financial Regulation before engaging in transactions with Class Representatives and Class Members;

      d.   Whether Prosper's acts in demanding appointment as an agent, and signing

promissory notes, for Class Representatives and Class Members violated CLEC;

e.   Whether Prosper's transactions with each Class member are contrary to the public policy of Maryland;

f.   Whether the statutes requiring Prosper to be licensed are regulatory in nature for the protection of the public, rather than merely to raise revenue, and enforcing Class members' Prosper loan accounts is against public policy;

g.   Whether Prosper or Velocity ever had any right to enforce Class or Subclass Members' loans;

h.   Whether each Class Member is entitled to a declaration under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. §§3-401 et seq. that their loan account is uncollectible;

i.   Whether each Class Member is entitled to recover damages under the MCSBA;

j.   Whether each Class Member is entitled to recover damages under the CLEC § 12-1018(a)(2) & (b);

k.   Whether each Class Member is entitled to recover amounts paid on their loan accounts within the applicable statute of limitations under the CPA, the MCDCA, and in money had and received;

l.   Whether the Class is entitled to disgorgement of Defendants' profits in restitution for unjust enrichment; and,

m.   Whether declaratory relief is proper to prevent Defendants from continuing

23

to seek amounts from Class Members in violation of Maryland law and to compel Defendants' compliance with Maryland law in the future, as to Class Member accounts.

124.    Class Representatives' claims are typical of the claims of the respective members of the Class within the meaning of Md. Rule 2-231(b)(3), and are based on and arise out of similar facts constituting the wrongful conduct of Defendants.

125.    Class Representatives will fairly and adequately protect the interests of the Class within the meaning of Md. Rule 2-231(b)(4).  Class Representatives are committed to vigorously litigating this matter.  Further, Class Representatives have secured counsel experienced in handling consumer class actions and complex consumer litigation.

126.    Neither Class Representatives nor Class Representatives' counsel has any interests which might cause them not to vigorously pursue this claim.

127.    The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants within the meaning of Md. Rule 2-231(c)(1)(A).

128.    Defendants' actions are generally applicable to the respective Class as a whole, and Class Representatives seek equitable remedies with respect to the Class within the meaning of Md. Rule 2-231(c)(2).

129.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(c)(3).

130.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

131. Class Representatives' counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

## Causes of Action

## Count One

## Declaratory Relief under Md. Cts. & Jud. Pro. § 3-406

132. Class Representatives re-allege and incorporate by reference the allegations set forth above as if fully set forth herein.

133. This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations of the Class Representatives and Class Members with PFL, PMI and Velocity, under the consumer protections embodied in Maryland law.

134. PFL and PMI maintain that neither of them was required to have a license from the Maryland Commissioner of Financial Regulation to engage in transactions with Class Representatives and Class Members.

135. Velocity maintains that PFL and PMI were not required to have a license from the Maryland Commissioner of Financial Regulation to engage in transactions with Subclass Members.

136. Class Representatives maintain that PFL and PMI were required to have a license from the Maryland Commissioner of Financial Regulation to engage in transactions with Class Representatives and Class Members.

137. PFL and PMI maintains that they and Velocity did not violate CLEC in the transactions of Class Representatives and Class Members.

138. Velocity maintains that it and PFL and PMI did not violate CLEC in the transactions

of Subclass Members.

139.   Class Representatives maintain that PFL and PMI violated CLEC in their transactions and the transactions of Class Members, and that Velocity violated CLEC in the transactions of Class Representatives and Subclass Members.

140.   PFL and PMI maintain that they and their assignees may assess and collect charges from Class Representatives and Class Members.

141.   Velocity maintains that it may assess and collect charges from Class Representatives and Subclass Members.

142.   Class Representatives assert that PFL and PMI do not have, and never had, the right to assess or collect charges from them, or from Class Members, due to the facts alleged in this Complaint.

143.   Class Representatives assert that Velocity does not have, and never had, the right to assess or collect charges from them, or from Sublass Members, based on accounts assigned to Velocity by Prosper, due to the facts alleged in this Complaint.

144.   Class Representatives and Class Members have received or will receive collection notices from PFL, PMI, and Velocity demanding payment of the alleged amounts due, and have been sued or will be sued for collection of the sums which PFL, PMI and Velocity claim are due.  Moreover, PFL, PMI and Velocity also notify credit reporting agencies (including Equifax, TransUnion and Experian) of the alleged balances due, thereby damaging the credit scores and history of Class Representative and the Class.

145.   These practices continue and will continue unless and until this Court declares and affirms that Defendants do not have a right to collect money from Class Members on their Prosper loan accounts.

146.     This presents an actual, justiciable controversy between the parties relating to the construction of the purported contracts of Class Representatives and members of the Class and the application of the law to those purported contracts. Defendants have sought and will continue to seek to collect amounts from Class Members when they are not legally entitled to do so. Defendants continue to harm Class Representatives and members of the Class by doing so.

147.     Class Representatives and members of the Class have a right to be free from the attempts of Defendants to collect amounts from them to which Defendants have no right.

**Count Two**

**Violation of the Maryland Credit Grantor Closed End Credit Provisions**

148.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

149.     PFL and PMI are credit grantors under CLEC in the transactions of Class Representatives and Class Members.

150.     Velocity is a credit grantor under CLEC in the transactions of Class Representatives and the Subclass Members.

151.     CLEC permits credit grantors to provide closed end credit under certain circumstances and subject to certain limitations, including compliance with provisions relating to interest charges. If a credit grantor complies with CLEC, the credit grantor may collect certain amounts in addition to the principal amount of the loan.

152.     In the event, however, that the credit grantor fails to comply with CLEC, the credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." CLEC §12-1018(a)(2). In addition, for a knowing violation, the credit grantor "shall forfeit to the borrower 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle." CLEC § 12-1018(b).

153.    In violation of CLEC, in Class Representatives' and each Class Member's transaction, PFL and PMI enforced a provision by which a person acting on behalf of a holder of the agreement, note, or other evidence of the loan is treated as an agent of the borrower in connection with its formation or execution. *See* CLEC § 12-1023(b)(2)(iv).

154.    In violation of CLEC, in Class Representatives' and each Subclass Member's transaction, Velocity enforced a provision by which a person acting on behalf of a holder of the agreement, note, or other evidence of the loan is treated as an agent of the borrower in connection with its formation or execution. *See* CLEC § 12-1023(b)(2)(iv).

155.    PFL, PMI and Velocity each knowingly engaged in these violations of CLEC.

**Count Three**

**Violation of the Maryland Credit Services Businesses Act**

156.    Class Representatives re-allege and incorporate by reference the allegations set forth above as if fully set forth herein.

157.    PFL and PMI are each "credit services businesses" as defined in the MCSBA § 14-1901(e)(1). Among other things, at all times relevant to this Complaint, and as described in this Complaint, PFL and PMI, with respect to the extension of credit by others, each sold, provided, or performed, or represented that each of them could or would sell, provide, or perform, services in return for the payment of money or other valuable consideration, including improving Class Representatives' and Class Members' credit records, histories, or ratings, or establishing a new credit file or record, or providing advice or assistance to a consumer with regard to improving Class Representatives' and Class Members' credit records, histories, or ratings or establishing a new credit files or record, and obtaining an extension of credit for Class Representatives and Class Members, and providing advice or assistance to Class Representatives and Class Members with regard to

obtaining an extension of credit for the Class Representatives and Class Members.

158.    At no time relevant to the actions alleged in this Complaint were PFL or PMI licensed by the Commissioner of Financial Regulation under Title 11, Subtitle 3 of the Financial Institutions Article of the Maryland Annotated Code.

159.    PFL and PMI each received money or other valuable consideration from Class Representatives and Class members when neither had secured a license from the Maryland Commissioner of Financial Regulation under Title 11, Subtitle 3 of the Financial Institutions Article, in violation of the MCSBA § 14-1902(1).

160.    PFL and PMI each received money and valuable consideration solely for the referral of Class Representatives and Class members to a credit grantor when the credit extended to the Class Representatives and Class Members was substantially on the same terms as those available to the general public, in violation of MCSBA §14-1902(2).

161.    PFL and PMI each made and used false and misleading representations in the offer and sale of the services of their business, in violation of MCSBA §14-1902(4). Among other things, PFL and PMI each represented to Class Representatives and each Class Member that PFL and PMI could be appointed as the Class member's attorney-in-fact to sign a promissory note for the Class member, and enforced that representation, when the Maryland law PFL and PMI elected to govern each Class member's transaction forbids doing so. In addition, PFL and PMI represented that Class members would have no opportunity to rescind their loans after funding, even though Maryland law required PFL and PMI to provide a notice of cancellation which Class members could use to rescind their loans. In addition, PFL and PMI represented that the origination fees in Plaintiff and Class Members' transactions were non-refundable when, in fact, they were refundable under Maryland law. In addition, PFL and PMI represented that the loans to Class Representatives and

Class Members carried simple interest, when they each in fact included compound interest.

162.     PFL and PMI engaged, directly or indirectly, in acts, practices, and courses of business which operated as a fraud or deception on Class members in connection with the offer or sale of the services of a credit services business, in violation of the MCSBA § 14-1902(5). Among other things, PFL and PMI each represented to Class Representatives and each Class Member that PFL and PMI could be appointed as the Class member's attorney-in-fact to sign a promissory note for the Class member, and enforced that representation, when the Maryland law PFL and PMI elected to govern each Class member's transaction forbids doing so. In addition, PFL and PMI represented that Class members would have no opportunity to rescind their loans after funding, even though Maryland law required PFL and PMI to provide a notice of cancellation which Class Representatives and Class Members could use to rescind their loans. In addition, PFL and PMI represented that the origination fees in Plaintiff and Class Members' transactions were non-refundable when, in fact, they were refundable under Maryland law. In addition, PFL and PMI represented that the loans to Class Representatives and Class Members carried simple interest, when they each in fact included compound interest.

163.     PFL and PMI never provided to Class Representatives or any Class Member any of the disclosures required by the MCSBA §14-1906, and never provided Class Representatives or any Class Member the "NOTICE OF CANCELLATION" required under that section.

164.     PFL and PMI materially and willfully misrepresented to Class Representatives and each Class Member that they had no right to rescind any loans after the loans were made, when the MCSBA affirmatively required PFL and PMI to disclose to Class Representatives and each Class Member that they could, in fact, rescind. That misrepresented information is required to be disclosed by the MCSBA. That information is also material to establishing PFL and PMI's liability

under the MCSBA. PFL and PMI's false statement that the Class Representatives' and Class Members' loans could not be rescinded was a trick and contrivance intended to prevent Class Members from knowing or exercising their rights. By representing that loans could not be rescinded, and by failing to disclose the notice of cancellation which the MCSBA required PFL and PMI to disclose to Class Representatives and each Class member, PFL and PMI concealed Class Members' rights to rescind their loans and concealed PFL's and PMI's violations of the MCSBA. PFL's and PMI's misrepresentation of Class Members' rights and concealment of their violations of the MCSBA was, at least, in reckless disregard of their obligations under the law. PFL and PMI intentionally represented that Class Members' loans could not be rescinded, when they could; PFL and PMI intentionally did not provide legally required cancellation notices, and PFL and PMI concealed their wrongdoing and Class Representatives' and Class Members' rights. Class Representatives and Class Members did not discover these misrepresentations and concealments until, at least, early 2021.

165.    PFL's and PMI's actions in violation of the MCSBA caused actual damages to each Class Representative and each Class Member, including in the amount of prohibited charges and sums which PFL and PMI were not legally permitted to assess, collect, or retain, but which PFL and PMI nevertheless did assess, collect, and retain from Class Representatives and Class Members.

## Count Four

## Violation of the Maryland Consumer Debt Collection Act

166.    Class Representatives re-allege and incorporate by reference the allegations set forth above as if fully set forth herein.

167.    PFL, PMI, and Velocity, at all times relevant to the actions alleged herein, were each a "collector" within the meaning of section 14-201(b) of the MCDCA, because the alleged debts of

Class Representatives and Class Members which Defendants sought to collect from Class Members through the actions described herein arose from consumer transactions – i.e. consumer loans.

168.    In collecting and attempting to collect on the alleged debts of Class Representatives and Class Members, PFL, PMI and Velocity each violated section 14-202 of the MCDCA by undertaking the actions described in this Complaint.

169.    Among other things, without limitation, PFL and PMI's collection methods violated section 14-202(8) of the MCDCA when they claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist. PFL and PMI undertook a collection method of claiming, attempting and threatening to enforce a right to collect money from Class Representatives and members of the Class, when they had to be licensed to do so.

170.    PFL and PMI knew that they was not licensed as a credit services business or as a lender in Maryland. Knowing that they did not possess a license from the Maryland Commissioner of Financial Regulation, PFL and PMI nevertheless persisted in a method of collecting from Class Representatives and Class Members without a license, when a license was required to do so.

171.    PFL and PMI further knew that it elected Maryland's CLEC in each transaction, which prohibited Prosper from enforcing a power of attorney in connection with the formation or execution of a promissory note for Class Representatives and Class Members – yet PFL and PMI proceeded to affirmatively and intentionally do exactly what the law, which PFL and PMI affirmatively elected, prohibited, as part of their unlawful method of extracting payments from Class Representatives and Class Members.

172.    PFL and PMI's actions in violation of the MCDCA proximately caused damages to Class Representatives and Class Members. As a direct and proximate result of PFL and PMI's collection methods which included claims, attempts and threats to enforce rights which did not exist,

Class Representative and Class Members were assessed and paid charges which they did not legally owe and which caused them damages.

173.   Velocity violated section 14-202(8) of the MCDCA when it claimed, attempted, or threatened to enforce rights with knowledge that the rights did not exist. Among other things, without limitation, Velocity undertook a collection method of claiming, attempting and threatening to enforce a right to collect money from Class Representatives and members of the Class, when it had no such right because its assignor Prosper, was not licensed to make, collect, or assign those loans, and Velocity knew it.

174.   Nevertheless, Velocity persisted in its method of collecting loans brokered and originated by Prosper without a license.

175.   Velocity further knew that Prosper elected Maryland's CLEC as governing law in each transaction, which prohibited Prosper or Velocity from enforcing a power of attorney in connection with the formation or execution of a promissory note for Class Representatives and Class Members – yet Velocity proceeded to affirmatively and intentionally collect amounts from Class Members based upon promissory notes signed by Prosper as Class Representatives' and Class Members' "attorney-in-fact," thus enforcing Prosper's illegal requirement that it be permitted to act as Class Representatives' and Class Members' agent for the purposes of forming and executing that promissory note. This method of collecting loans, by enforcing a provision prohibited by law, was illegal.

176.   PFL, PMI, and Velocity's actions in violation of the MCDCA proximately caused damages to Class Representatives and Class Members. As a direct and proximate result of PFL's, PMI's, and Velocity's claims, attempts and threats to enforce rights which did not exist, Class Representatives and Class Members were assessed and paid charges which should not have been

collected through Defendants' unlawful collection methods, thereby causing them damages.

## Count Five

### Violation of the Maryland Consumer Protection Act

177.    Class Representatives re-allege and incorporate by reference the allegations set forth above as if fully set forth herein.

178.    Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia*, in the extension of consumer credit and in the collection of consumer debts.  CPA, § 13-303(3) and (4).

179.    As "person[s]" under the CPA, § 13-101(h), PFL, PMI and Velocity are prohibited from engaging in unfair, abusive or deceptive trade practices.

180.    PFL's, PMI's and Velocity's systematic behavior described in this Complaint violated the CPA.

181.    Among other things, without limitation, PFL's, PMI's, and Velocity's violations of CLEC in their transactions with Class Representatives and Class Members, PFL's and PMI's demand that Class Representatives and other Class members pay amounts which were not due to PFL or PMI, and Velocity's demand that Mr. Jones, Mr. Park and Velocity Subclass Members pay amounts which were not due to Velocity, are unfair and deceptive practices in violation of the CPA.

182.    In addition, the CPA specifically prohibits PFL, PMI and Velocity from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers.  CPA, § 13-301(1).

183.    The CPA further prohibits PFL, PMI and Velocity from failing to state a material fact if the failure deceives or tends to deceive.  CPA § 13-301(3).

184.    In violation of the CPA, § 13-303(3) - (4) and § 13-301(1), PFL and PMI represented to Class Representatives and Class Members that the amounts they were charging were permitted by law, and that Class Representatives and the Class members owed them money, which, in fact, Class Representatives and Class Members did not owe and which neither PFL nor PMI could lawfully collect. In these communications with Class Representatives and other members of the Class, PFL and PMI engaged in misrepresentations and failures to state material facts which deceived and tended to deceive, and, again, violated the CPA. These written statements were false and misleading and tended to deceive Class Representatives and members of the Class.

185.    In violation of the CPA, § 13-303(3) - (4) and § 13-301(1), Velocity represented to Class Representatives and Subclass Members that the amounts it was charging were permitted by law, and that Class Representatives and Subclass Members owed it money, which, in fact, Class Representatives and Subclass Members did not owe and which Velocity could not lawfully collect. In these communications with Class Representatives and Subclass Members, Velocity engaged in misrepresentations and failures to state material facts which deceived and tended to deceive, and, again, violated the CPA. These written statements were false and misleading and tended to deceive Class Representatives and Subclass Members.  Class Representatives and Subclass Members were damaged when Velocity assessed and collected charges which were not owed.

186.    In violation of the CPA, § 13-303(3) - (4) and §13-301(3), PFL and PMI failed to disclose to Class Representatives and Class Members material facts. Specifically, PFL and PMI failed to disclose that they were enforcing an illegal power of attorney provision in violation of CLEC, and failed to disclose that PFL and PMI were not entitled to collect the amounts they were collecting in the transactions of Class Representatives and Class Members.

187.    In violation of the CPA, § 13-303(3) - (4) and §13-301(3), Velocity failed to disclose

material facts to Class Representatives and Subclass Members. Specifically, Velocity failed to disclose that it was enforcing an illegal power of attorney provision in violation of CLEC, and failed to disclose that Velocity was not entitled to collect the amounts it was collecting from Class Representatives and Subclass Members.

188.    PFL and PMI failed to disclose to Class Representatives and the Class Members its violations of the law.

189.    Velocity failed to disclose to Class Representatives and Subclass Members its violations of the law.

190.    These failures to disclose material facts led Class Representatives and Class Members to make payments which were not due and which they would not have made had they been informed them of the material facts. PFL, PMI and Velocity committed unfair and deceptive practices by collecting and attempting to collect on alleged debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, § 13-101 *et seq.*, including §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

191.    As a result of PFL's and PMI's unfair and deceptive trade practices in violation of the CPA, Class Representatives and Class Members were caused injury and loss, in the amount of the charges assessed to them by PFL and PMI.

192.    As a result of Velocity's unfair and deceptive trade practices in violation of the CPA, Class Representatives and Subclass Members were caused injury and loss in the amount of the charges assessed to them by Velocity.

## Count Six

## Restitution and Unjust Enrichment

193.    Class Representatives re-allege and incorporate by reference the allegations set forth

above as if fully set forth herein.

194.    By paying money to PFL and PMI which was not owed or legally collectible, Class Representatives and Class Members conferred the benefit of these illegally collected amounts upon Prosper.

195.    PFL and PMI accepted the benefits conferred upon the by Class Representatives and Class Members when it accepted and retained the money paid by Class Members. PFL and PMI were aware of the benefits conferred on them, as they affirmatively demanded those benefits.

196.    The collection, acceptance and retention of these amounts by PFL and PMI, when they were not entitled to do so as a matter of law, was and continues to be unjust and inequitable. PFL and PMI have not refunded the unlawfully collected amounts to Class Representatives and Class Members.  PFL and PMI should not be permitted to retain the benefits of those unlawful collections. PFL's and PMI's continued withholding of the unlawfully collected amounts is improper.

197.    Class Representatives and members of the Class conferred these unjust benefits upon Prosper after and as a result of PFL's and PMI's misconduct as set forth herein.

198.    By paying money to Velocity which was not owed or legally collectible, Class Representatives and the Subclass Members conferred a benefit of these illegally collected amounts upon Velocity.

199.    Velocity accepted the benefits conferred upon it by Class Representatives and the Subclass Members when it accepted and retained the money paid on their accounts. Velocity was aware of the benefits conferred on it, as it affirmatively demanded those benefits.

200.    Velocity's collection, acceptance and retention of these amounts, when Velocity was not entitled to the charges as a matter of law, was and continues to be unjust and inequitable. Velocity has not refunded the unlawfully collected amounts to Class Representatives and Subclass Members.

Velocity should not be permitted to retain the benefits of those unlawful collections. Velocity's continued withholding of the unlawfully collected amounts is improper.

201.    Class Representatives and Subclass Members conferred these unjust benefits upon Velocity after and as a result of Velocity's misconduct as set forth herein.

## Count Six

## Money Had and Received

202.    Class Representatives re-allege and incorporate by reference the allegations set forth above as if fully set forth herein.

203.    PFL and PMI collected money from Class Representatives and Class Members to which they had no legal or equitable right.

204.    PFL and PMI acted as a credit services business and lender in its dealings with Class Representatives and Class Members, when it lacked the license required to do so, and its lack of licensure, under the law, meant that it was prohibited from collecting any money from Class Representatives and Class Members.

205.    PFL and PMI collected money from Class Representatives and Class Members, when theu had had no legal or contractual right to collect any money from Class Representatives and Class Members.

206.    PFL and PMI sold Class Representatives' and Subclass Members' loan accounts to Velocity, when neither PFL nor PMI had any right to collect any money from Class Representatives and Subclass Members, and no right to purport to sell any right to collect any money from Class Representatives or Subclass Members.

207.    Velocity collected money from Class Representatives and Subclass Members to which it had no legal or equitable right.

208.    Velocity had no legal or contractual right to collect any money from Class Representatives or Subclass Members, as PFL and PMI had no right to collect any money from Subclass Members when it assigned their loan accounts to Velocity.

209.    These actions of PFL, PMI, and Velocity were and are illegal.

210.    As a result of the actions alleged above, PFL, PMI, and Velocity obtained possession of money which, in equity and good conscience, it ought not to be allowed to retain and should return to Class Representatives and other Class members.

WHEREFORE, Class Representatives demand declaratory judgment and judgment in an aggregated amount for the Class as a whole in excess of $75,000.00, as follows:

A.    A declaratory judgment establishing that Prosper was required to be licensed by the Commissioner of Financial Regulation to undertake the actions alleged in this Complaint;

B.    A declaratory judgment establishing that Prosper never had any right to collect any money from Class Representatives or Class Members;

C.    A declaratory judgment establishing that Velocity never had any right to collect any money from Class Representatives or Subclass Members based on an assignment of a loan account from Prosper;

D.    Payment to Class Representatives and Class Members of the statutory damages imposed under CLEC, §12-1018(a)(2), including a return to Class Representatives and Class Members all sums paid to Prosper as interest, costs, fees or

other charges;

E.     Payment to Class Representatives and Subclass Members of the statutory damages imposed under CLEC, §12-1018(a)(2), including a return to Class Representatives and Subclass Members of all sums paid to Velocity as interest, costs, fees or other charges;

F.     Payment to Class Representatives and Class Members of the statutory damages imposed under CLEC § 12-1018(b), of three times the interest, costs, fees, and other charges which Prosper and Velocity collected in excess of that allowed by CLEC;

G.     Payment to Class Representatives and Class Members of actual damages for Prosper's and Velocity's violations of the MCSBA, the MCDCA, and the MCPA;

H.     Payment to Class Representatives and Class Members of all amounts collected from them under their Prosper loan accounts;

I.     Disgorgement in restitution of all profits and benefits realized by Prosper and Velocity as a result of their transactions involving Class Representatives and Class Members;

J.     Judgment in favor of Class Representatives the Class against Prosper and Velocity for such compensatory damages as the evidence shall warrant;

K.     Pre-judgment and post-judgment interest at the legal rate on

all sums awarded to Class Representatives and Class Members;

L.    Reasonable counsel fees and the costs of these proceedings; and,

M.    Such other and further relief as the nature of this case may require.

Respectfully submitted,

Benjamin H. Carney
bcarney@GWCfirm.com
Richard S. Gordon
rgordon@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., Suite 100
Towson, Maryland 21204
Telephone: (410) 825-2300
Facsimile: (410) 825-0066

**Attorneys for Class Representatives and the Class**

## **JURY TRIAL**

Plaintiffs demand a trial by jury on all issues triable of right by a jury.

Benjamin H. Carney