## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| QUINCY JONES, et al., | |
| Plaintiffs, | Civil Action No. 8:21-cv-00893-GJH |
| v. | Hon. George J. Hazel |
| PROSPER MARKETPLACE, INC., et al., | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Defendants Prosper Marketplace, Inc. ("PMI"), Prosper Funding, LLC ("PFL," and together with PMI, "Prosper"), and Velocity Investments, LLC ("Velocity," and together with Prosper, "Defendants") hereby submit this Memorandum in Support of Defendants' Motion to Compel Arbitration and Dismiss or, Alternatively, Stay (the "Motion").

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     RELEVANT FACTUAL BACKGROUND ........................................................3

        A.      The Parties ...............................................................................................3

        B.      Plaintiffs' Allegations in the Complaint .................................................3

        C.      Plaintiffs Agreed to Two Arbitration Agreements When They Applied for
                Loans Through the Prosper Platform. .....................................................4

                1.      Plaintiffs Create Listings for Loans and Agree to the Terms of the
                        BRA. ..............................................................................................5

                2.      The BRA Contains an Arbitration Agreement..............................5

                3.      Plaintiffs Also Agreed to Arbitrate in the Promissory Note. .......7

III.    LEGAL STANDARD.............................................................................................7

IV.     ARGUMENT ..........................................................................................................8

        A.      The FAA Governs....................................................................................8

        B.      Plaintiffs Agreed to the BRA Arbitration Agreement. ...........................9

                1.      Maryland Law Determines Whether the Parties Agreed to Arbitrate
                        Their Disputes. ............................................................................10

                2.      Plaintiffs Accepted the BRA.......................................................11

                3.      Under the BRA, Plaintiffs Must Arbitrate Their Claims Against All
                        Defendants. .................................................................................12

        C.      The BRA Arbitration Agreement Delegates All Gateway Disputes to the
                Arbitrator................................................................................................15

                1.      The Parties "Clearly and Unmistakably" Agreed to Arbitrate
                        Arbitrability..................................................................................15

                2.      Plaintiffs Have Not Challenged the Delegation Clause Specifically.........17

                3.      Even a Specific Challenge to the Delegation Clause Would Fail..............20

D.      Even if the BRA Arbitration Agreement Did Not Delegate Gateway
        Issues, the Court Should Still Compel Arbitration Because All of
        Plaintiffs' Claims Are Within the Arbitration Agreement's Broad Scope. ...........31

E.      Alternatively, Plaintiffs' Claims Are Also Subject to Arbitration Under
        Their Promissory Notes. .......................................................................................33

F.      The Court Should Dismiss or, Alternatively, Stay This Case Pending
        Arbitration.............................................................................................................35

V.   CONCLUSION..............................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul-Hasib v. Aerotek, Inc.*,
No. MJG-17-1502, 2017 WL 5903555 (D. Md. Nov. 29, 2017)...............................................8

*Adkins v. Labor Ready, Inc.*,
303 F.3d 496 (4th Cir. 2002) ...............................................................................................19

*Airborne Health, Inc. v. Squid Soap, LP*,
984 A.2d 126 (Del. Ch. 2009)...............................................................................................25

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)...............................................................................................................8

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*,
96 F.3d 88 (4th Cir. 1996) ...................................................................................................32

*Arnold v. Homeaway, Inc.*,
890 F.3d 546 (5th Cir. 2018) ...........................................................................................2, 19

*Beachum v. Phillips*,
No. 2:09-cv-00378, 2009 WL 3269047 (S.D. W. Va. Oct. 8, 2009).......................................9

*Bishop v. Carrington Mortg. Servs., LLC*,
No. RDB-20-2369, 2020 WL 7319252 (D. Md. Dec. 11, 2020)...................................11, 12

*Bloom Master Inc. v. Bloom Master LLC*,
442 P.3d 1178 (Utah Ct. App. 2019) ...................................................................................27

*Blue Bird, LLC v. Nolan*,
No. 302920-V, 2009 WL 1498704 (Cir. Ct. Md. Apr. 28, 2009)...........................................11

*Brito v. Major Energy Elec. Servs.*,
LLC, No. ELH-20-0230, 2021 WL 1060283 (D. Md. Mar. 18, 2021)...................................21

*Harby ex rel. Brooks v. Wachovia Bank, N.A.*,
172 Md. App. 415 (2007) .....................................................................................................30

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2005)...............................................................................................18, 19, 34

*Cara's Notions, Inc. v. Hallmark Cards, Inc.*,
140 F.3d 566 (4th Cir. 1998) ...............................................................................................32

*Charlotte Broad., LLC v. Davis Broad. of Atlanta, L.L.C.*,
No. 13C-04-143-WCC CCLD, 2015 WL 3863245 (Del. Super. Ct. June 10,
2015), *aff'd*, 134 A.3d 759 (Del. 2016) ...................................................................25

*Cheek v. United Healthcare of the Mid-Atl., Inc*,
378 Md. 139 (2003) ......................................................................................... *passim*

*Cherdak v. ACT, Inc.*,
437 F. Supp. 3d 442 (D. Md. 2020) ...............................................................28, 29

*Chess v. CF Arcis IX LLC*, No. 20-CV-01625-CRB, 2020 WL 4207322 (N.D.
Cal. July 22, 2020) .............................................................................................25

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
252 F.3d 707 (4th Cir. 2001) ...............................................................................35

*Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*,
807 F.3d 553 (4th Cir. 2015) .................................................................................8

*Ciena Corp. v. Jarrard*,
203 F.3d 312, 324 (4th Cir. 2000) .......................................................................21

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .............................................................................................8, 9

*Cleaning Auth., Inc. v. Neubert*,
739 F. Supp. 2d 807 (D. Md. 2010) .....................................................................21

*Cnty. Comm'rs for Carroll Cnty. v. Forty W. Builders, Inc.*,
178 Md. App. 328 (2008) ....................................................................................11

*Collins v. Discover Fin. Servs.*,
No. PX-17-03011, 2018 WL 6434503 (D. Md. Dec. 7, 2018) .........................15, 16

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
835 F.3d 1195 (10th Cir. 2016) ...............................................................2, 19, 22

*Cox v. Time Warner Cable, Inc.*,
No. 3:12-cv-03333-JFA, 2013 WL 5469992 (D.S.C. Sept. 30, 2013) ...................20

*Damato v. Time Warner Cable, Inc.*,
No. 13-CV-994 (ARR)(RML), 2013 WL 3968765 (E.D.N.Y. July 31, 2013)........19

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985).............................................................................................8

*Diatect Int'l Corps. v. Organic Materials Rev. Inst.*,
No. 2:05 CV 00465, 2007 WL 752165 (D. Utah Mar. 7, 2007).......................23, 24

*Drews Distrib. v. Silicon Gaming, Inc.*,
  245 F.3d 347 (4th Cir. 2001) ...................................................................7, 31, 32

*Duplex Envelope Co. v. Baltimore Post Co.*,
  163 A. 688 (1933) ...........................................................................................11

*Elder v. BMO Harris Bank*,
  No. JFM-13-3043, 2014 WL 1429334 (D. Md. Apr. 11, 2014) ...........................13

*First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*,
  No. 2:15-cv-00229-DN, 2016 WL 6902473 (D. Utah Nov. 23, 2016)..................26

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995).........................................................................................10

*Francis v. Allstate Ins. Co.*,
  709 F.3d 362 (4th Cir. 2013) ...........................................................................11

*Grant-Fletcher v. Collecto, Inc.*,
  No. RDB-13-3505, 2014 WL 1877410 (D. Md. May 9, 2014) .............................13

*Griggs v. Evans*,
  205 Md. App. 64 (2012) ...................................................................................14

*Hayes v. Delbert Servs. Corp.*,
  811 F.3d 666 (4th Cir. 2016) ......................................................................20, 35

*Hildreth v. Castle Dental Ctrs., Inc.*,
  939 A.2d 1281 (Del. 2007) ...............................................................................26

*Hill v. Peoplesoft USA, Inc.*,
  412 F.3d 540 (4th Cir. 2005) ......................................................................28, 29

*Holloman v. Cir. City Stores, Inc.*,
  391 Md. 580 (2006) .........................................................................................30

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)...........................................................................................15

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
  206 F.3d 411 (4th Cir. 2000) ...........................................................................13

*James v. Synovus Bank*,
  No. TDC-19-1137, 2020 WL 1479115 (D. Md. Mar. 26, 2020)...........................10

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
  400 F.3d 868 (11th Cir. 2005) ...........................................................................9

*Jeske v. Brooks*,
    875 F.2d 71 (4th Cir. 1989) ...................................................................................19

*Jones v. Genus Credit Mgmt. Corp.*,
    353 F. Supp. 2d 598 (D. Md. 2005) .......................................................................13

*Kelley Constr. Co. v. Wash. Suburban Sanitary Comm'n*,
    247 Md. 241 (1967) ...............................................................................................30

*Kunda v. C.R. Bard, Inc.*,
    671 F.3d 464 (4th Cir. 2011) .................................................................................22

*Lomax v. Weinstock, Friedman & Friedman, P.A.*,
    No. CCB-13-1442, 2014 WL 176779 (D. Md. Jan. 15, 2014) ...............................14

*Long v. Silver*,
    248 F.3d 309 (4th Cir. 2001) .................................................................................33

*Lyles v. Chegg, Inc.*,
    No. RDB-19-3235, 2020 WL 1985043 (D. Md. Apr. 27, 2020) ...........................8, 10, 11, 35

*Markham v. Bradley*,
    173 P.3d 865 (Utah 2007) .....................................................................................25

*Marmet Health Care Ctr., Inc. v. Brown*,
    565 U.S. 530 (2012) ................................................................................................8

*Maryland v. Wirtz*,
    392 U.S. 183 (1968) ................................................................................................9

*Meena Enters. v. Mail Boxes Etc., Inc.*,
    No. DKC 12-1360, 2012 WL 4863695 (D. Md. Oct. 11, 2012) ................................14, 15, 16

*Mey v. DIRECTV, LLC*,
    971 F.3d 284 (4th Cir. 2020) .................................................................................12, 33

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)......................................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..................................................................................................31

*Mowbray v. Zumot*,
    536 F. Supp. 2d 617 (D. Md. 2008) .......................................................................31

*Muriithi v. Shuttle Express, Inc.*,
    712 F.3d 173 (4th Cir. 2013) .............................................................................18, 19, 20, 35

*Nitro-Lift Techs., L.L.C. v. Howard*,
   568 U.S. 17 (2012)..................................................................................................2

*Noohi v. Toll Bros.*,
   708 F.3d 599 (4th Cir. 2013) ................................................................................29

*Notre Dame v. Morabito Consultants, Inc.*,
   132 Md. App. 158 (2000) ......................................................................................14

*Optical Mechs., Inc. v. Cymbioms Corp.*,
   No. GJH-20-1947, 2021 WL 461796 (D. Md. Feb. 9, 2021) ................................21

*Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*,
   867 F.2d 809 (4th Cir. 1989) ................................................................................31

*Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*,
   738 F.3d 95 (4th Cir. 2013) ..................................................................................10

*Pick v. Discover Fin. Servs., Inc.*,
   No. CIV. A. 00-935-SLR, 2001 WL 1180278 (D. Del. Sept. 28, 2001) ...........22, 23

*Plaze, Inc. v. Callas*,
   No. 2018-0721-TMR, 2019 WL 1028110 (Del. Ch. Feb. 28, 2019).......................24

*Preston v. Ferrer*,
   552 U.S. 346 (2008)................................................................................................2

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1988)........................................................................................18, 19

*Prince George's Cnty. v. Silverman*,
   58 Md. App. 41 (1984) ..........................................................................................11

*Questar Builders, Inc. v. CB Flooring, LLC*,
   410 Md. 241 (2009) ........................................................................................30, 31

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010)............................................................................8, 15, 17, 18

*Res. Mgmt. Co. v. Weston Ranch & Livestock Co., Inc.*,
   706 P.2d 1028 (Utah 1985)....................................................................................24

*Savonis v. Burke*,
   241 Md. 316 (1966) ..............................................................................................30

*Simply Wireless, Inc., v. T-Mobile US, Inc.*,
   877 F.3d 522 (4th Cir. 2017), *abrogated on other grounds by Henry Schein,*
   *Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019) ..................................16

*Snowden v. CheckPoint Check Cashing*,
   290 F.3d 631 (4th Cir. 2002) ............................................................18

*Sonitrol Holding Co. v. Marceau Investissements*,
   607 A.2d 1177 (Del. 1992) ............................................................23

*Sydnor v. Conseco Fin. Servicing Corp.*,
   252 F.3d 302 (4th Cir. 2001) ............................................................20

*Tanner v. Provo Reservoir Co.*,
   289 P. 151 (Utah 1930)............................................................22, 24

*Taylor v. Lotus Dev. Corp.*,
   906 F. Supp. 290 (D. Md. 1995) ............................................................21

*United Am. Life Ins. Co. v. Zions First Nat. Bank*,
   641 P.2d 158 (Utah 1982) ............................................................24

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)............................................................31

*Valle v. ATM Nat., LLC*,
   No. 14-cv-7993 (KBF), 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015)....................................25

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
   763 F.3d 273 (3d Cir. 2014)............................................................26

*Whitt v. Prosper Funding LLC*,
   No. 1:15-cv-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015)........................1, 10, 36

*Wynne v. Am. Express Co.*,
   No. 2:09-CV-00260-TJW, 2010 WL 3860362 (E.D. Tex. Sept. 30, 2010)...........................22

**Statutes**

9 U.S.C. §§ 1, 2............................................................*passim*

9 U.S.C. § 3............................................................35

9 U.S.C. § 4............................................................35

Md. Code Ann., Com. Law § 12-1023(b)(2)(iv) ........................................................34

**Other Authorities**

*American Arbitration Association,* AAA Consumer Arbitration Rules R-14,
   https://www.adr.org/sites/default/files/Consumer-Rules-Web.pdf........................................16

*JAMS*, JAMS Streamlined Arbitration Rules & Procedures Rule 8(b),
    https://www.jamsadr.com/rules-streamlined-arbitration/#Rule8 ............................................ 16

## I.   **INTRODUCTION**

In this lawsuit, Plaintiffs Quincy Jones and Dae Park ("Plaintiffs") allege claims against Defendants arising out of loans they registered for through Prosper's online platform.  Plaintiffs assert their loan agreements are unenforceable because Prosper is not properly licensed in Maryland and because the terms of their loan agreements violated Maryland's Credit Grantor Closed End Credit Provisions ("CLEC").  At the appropriate time, Defendants will seek dismissal of these claims on the merits.  But this is neither the time nor the forum for that: the parties expressly agreed to arbitrate these claims pursuant to two binding arbitration agreements that must be enforced under the Federal Arbitration Act ("FAA").

When they registered for their loans, Plaintiffs each entered into a Borrower Registration Agreement ("BRA") that included a mandatory arbitration clause (the "BRA Arbitration Agreement").  The BRA Arbitration Agreement requires Plaintiffs to arbitrate any claims arising out of or related to their relationship with Defendants or the parties' agreement in accordance with the FAA.  It also expressly delegates any "gateway" arbitrability disputes regarding the scope, validity, or enforceability of the BRA Arbitration Agreement to the arbitrator.  Because there is no reasonable dispute that the agreement exists and any gateway questions are for the arbitrator, not the Court, to consider, the FAA requires the Court to compel Plaintiffs' claims to arbitration.  *Whitt v. Prosper Funding LLC*, No. 1:15-cv-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015) (compelling the plaintiff's claims against Prosper to arbitration under a substantially identical BRA and upholding the agreement's validity).  Further, in addition to the BRA Arbitration Agreement, Plaintiffs also agreed to be bound by a promissory note that itself includes an arbitration clause (the "Note Arbitration Agreement") that covers their claims here and also delegates gateway disputes to the arbitrator.  Thus, even if the Court determines that the BRA Arbitration Agreement does not apply, the Note Arbitration Agreement requires arbitration anyway.

Evidently aware of his agreement to arbitrate, Plaintiff Quincy Jones filed a petition in Maryland state court ("Petition") seeking a prospective declaration that the arbitration provisions in his BRA and promissory note are unenforceable.[1]  That Petition (filed the same day as this class action complaint) argues that the BRA Arbitration Agreement is unenforceable because a change-in-terms provision renders it illusory, and that the Note Arbitration Agreement is unenforceable because it violates a provision of the CLEC.  Neither of these arguments has merit.  The modification provision in the BRA does not render Plaintiffs' agreement to arbitrate illusory, and their CLEC argument is facially irrelevant.  And, in any event, neither of these arguments can serve as a basis to deny arbitration because they are arguments that go to the entire contract, as opposed to the arbitration clause specifically.  As a matter of longstanding substantive FAA law, such questions can only be addressed by the arbitrator.  *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20-21 (2012) ("[I]t is a mainstay of the [Federal Arbitration] Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'") (quoting *Preston v. Ferrer*, 552 U.S. 346, 349 (2008)).  Indeed, the Fifth and Tenth Circuits have specifically held that the illusory challenge Plaintiffs make here goes to the enforceability of the underlying agreement as a whole and is reserved for the arbitrator.  *See Arnold v. Homeaway, Inc.*, 890 F.3d 546, 554 (5th Cir. 2018); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1211 (10th Cir. 2016) ("*Cox*").

For these reasons, and those discussed in further detail below, the Court should compel Plaintiffs' claims to arbitration and stay or dismiss this case while arbitration is pending.

---

[1] *See Jones v. Velocity Investments, LLC*, Case No. 484730V, filed in the Circuit Court for Montgomery County, Maryland.

2

## II.   RELEVANT FACTUAL BACKGROUND

### A.   The Parties

Plaintiffs Quincy Jones and Dae Park are Maryland residents and citizens.  (Compl. ¶ 21 (ECF No. 3).)  They applied for loans through an online marketplace hosted by Prosper, a peer-to-peer online platform headquartered in California that allows individuals to request personal loans. (Declaration of Allyson Bryant ("Bryant Decl.") ¶¶ 3-4.)  Velocity is an accounts receivables management company headquartered in New Jersey that acquires delinquent loans and seeks to recover outstanding debts.  (Compl. ¶ 25.)  Finally, while not named as a party, the entity that actually extended credit to Plaintiffs is WebBank, a state-chartered bank located in Utah.  (Compl. ¶¶ 38-39; *see also* Decl. of Michael Rome ("Rome Decl.") Ex. A (identifying WebBank's main office location in Salt Lake City, Utah).)

### B.   Plaintiffs' Allegations in the Complaint

Plaintiffs allege identical claims arising out of agreements they entered into with Prosper. Plaintiffs' Complaint can be distilled to two main theories of liability.  First, Plaintiffs claim that Prosper "arrang[ed] loans for Maryland consumer borrowers," including Plaintiffs, without an allegedly required license.  (Compl. ¶ 8; *see also id.* ¶¶ 4-7, 70-71.)  Second, Plaintiffs allege that in the loan documents for each Plaintiff's transaction, "Prosper's form adhesion loan documents included provisions stating that the [Plaintiffs] . . . gave Prosper a power of attorney to sign a promissory note at some time in the future," (*id.* ¶ 35), and that "in each and every transaction of Plaintiffs and the Class Members, Prosper . . . acted as an 'attorney-in-fact' for the borrower, and illegally signed the promissory note with the borrower's name."  (*Id.* ¶ 11.)  Plaintiffs allege this practice violates the CLEC, which they claim governs their loans.  (*Id.* ¶ 9; *see id.* ¶¶ 81-85.)

Based on these allegations, Plaintiffs allege "Prosper was never entitled to collect any money from Plaintiffs or any Class member."  (*Id.* ¶ 13; *see id.* ¶ 92.)  They also claim their

"purported contracts were void and unenforceable" and that as a result, "Prosper was never entitled to enforce any terms of any of those purported contracts or collect any money from [Plaintiffs] or any Class Member in connection with those purported contracts."  (*Id.* ¶ 87.)

Plaintiffs' allegations against Velocity are entirely derivative of their claims against Prosper.  They allege that because Prosper sold "illegal and uncollectible loan accounts of Class Representatives" to Velocity, (*id.* ¶ 2), Velocity cannot collect on them.  (*Id.* ¶ 14 ("Although Prosper assigned the loan accounts of Plaintiffs . . . to Velocity, Prosper could not assign any rights to Velocity which it did not have.  Prosper had no right to collect any money from Plaintiffs or any Class Member, and Velocity, as Prosper's assignee, has no such right either.").)

Based on these allegations, Plaintiffs seek multiple forms of relief, including a declaratory judgment that the Defendants never had any right to collect loan payments from them, a refund of all amounts paid under their agreements with Defendants, statutory damages, actual damages, punitive damages, and attorneys' fees.  (Prayer for Relief ¶¶ B-M.)

### C.    Plaintiffs Agreed to Two Arbitration Agreements When They Applied for Loans Through the Prosper Platform.

Prosper's platform allows a user to apply for a personal loan that Prosper then lists on its platform to obtain funding commitments from investors.  (Bryant Decl. ¶ 4, Exs. C, G ¶ 3.)  Once a loan receives sufficient investor commitment, WebBank makes a loan to the borrower.  (Bryant Decl. Exs. C, G ¶ 5.)  To complete this process and obtain their loans, Plaintiffs entered into three agreements, two of which are relevant here:[2]

- The BRA:  First, Plaintiffs' right to use Prosper's online lending marketplace is governed by an agreement to which all prospective borrowers must consent in order to apply for and

---

[2] The third agreement is the Terms of Use governing the use of Prosper's website to which Plaintiffs also agreed to be bound.

obtain loans: the BRA.  As set forth below, each Plaintiff agreed to the BRA that governs

the rights and responsibilities of the parties and includes an arbitration agreement.

- The Note:  Second, promissory notes set forth the terms governing Plaintiffs' loans.  We

    explain how each Plaintiff accepted his note below.

### 1.    Plaintiffs Create Listings for Loans and Agree to the Terms of the BRA.

Plaintiff Quincy Jones ("Jones") created a request for a loan (a "listing") through Prosper's

online lending platform on February 10, 2015.  (Bryant Decl. ¶ 15.)  Plaintiff Dae Park ("Park")

created a listing on June 3, 2017.  (*Id.* ¶ 29.)  During the listing process, Park was presented with

a screen showing a clickable check box below text stating, "**By clicking the box below, you**

**confirm that you agree by electronic signature to**: . . . the borrower registration agreement."

(*Id.* ¶ 25, Ex. E.)  Similarly, Jones was presented with a screen showing a clickable check box

below text stating, "**Clicking the box below constitutes your acceptance of:** . . . the borrower

registration agreement."  (Bryant Decl. ¶ 11, Ex. A.)  For both, the words "borrower registration

agreement" contained a link to the then-applicable BRA.  (Bryant Decl. ¶¶ 11, 25, Exs. A, E.)

Plaintiffs could not continue to the next step in the loan listing process without checking the box

to affirm their consent to the BRA and then clicking a large "Continue" button.  (*Id.* ¶¶ 12, 26.)  In

other words, Plaintiffs could not have completed the loan listing process through Prosper's online

lending marketplace without accepting and agreeing to the BRA.  (*Id.* ¶¶ 7, 12, 21, 26.)  Prosper's

records confirm that Plaintiff Jones affirmatively consented to the BRA on February 10, 2015, and

that Plaintiff Park affirmatively consented to the BRA on June 3, 2017.  (*Id.* ¶¶ 15, 29.)

### 2.    The BRA Contains an Arbitration Agreement.

The BRA each Plaintiff agreed to contains a mandatory arbitration agreement (the "BRA

Arbitration Agreement") at paragraph 22.  Notably, Plaintiffs had the opportunity to opt-out of the

agreement by submitting an opt-out notice to PMI within 30 days of entering into the BRA, but neither did so.  (Bryant Decl. ¶¶ 17, 30.)

Park's BRA Arbitration Agreement provides, in relevant part, that:

> **YOU ACKNOWLEDGE THAT YOU HAVE READ THIS PROVISION CAREFULLY, AND UNDERSTAND THAT IT LIMITS YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND US.**
>
> Any Claim shall be resolved, upon the election of either us or you, by binding arbitration administered by the American Arbitration Association or JAMS, under the applicable arbitration rules of the administrator in effect at the time a Claim is filed ("Rules").
>
> "Claim" means any dispute, claim, or controversy (whether based on contract, tort, intentional tort, constitution, statute, ordinance, common law, or equity, whether pre-existing, present, or future, and whether seeking monetary, injunctive, declaratory, or any other relief) arising from or relating to this Agreement or the relationship between us and you (including claims arising prior to or after the date of the Agreement, and claims that are currently the subject of purported class action litigation in which you are not a member of a certified class), and includes claims that are brought as counterclaims, cross claims, third party claims or otherwise, as well as disputes about the validity or enforceability of this Agreement or the validity or enforceability of this Section 22.

(*Id.* Ex. G ¶ 22(a)(iii), (b).)  Jones's agreement is substantially the same.  (*Id.* Ex. C ¶ 22(a)(iii), (b).)  The BRA defines "You" to refer to Plaintiffs, and "us" to refer to "WebBank, Prosper Funding LLC, and each of their respective parents, subsidiaries, affiliates, predecessors, successors, and assigns . . . ."  (Bryant Decl. Exs. C, G ¶ 22(a)(i)-(ii).)  This agreement applies to Plaintiffs' claims against all Defendants because PMI is PFL's parent and Velocity is Prosper's assign.  (*See* Compl. ¶ 1 (identifying PMI as PFL's parent), ¶ 14 (alleging "Prosper assigned the loan accounts of Plaintiffs . . . to Velocity"), ¶ 51 (identifying Velocity as Prosper's "assignee debt collector"), ¶ 173 (identifying Prosper as Velocity's "assignor"); Bryant Decl. ¶¶ 19, 32.)

### 3.      Plaintiffs Also Agreed to Arbitrate in the Promissory Note.

The BRA each Plaintiff agreed to also contained a provision authorizing Prosper to act as his attorney-in-fact to execute a promissory note once his loan listing received sufficient funding commitments from investors.  (Bryant Decl. Exs. C ¶ 24, G ¶ 25.)  Using this authority, PMI executed promissory notes on Plaintiffs' behalf.  (Bryant Decl. ¶¶ 18, 31, Exs. D, H.)  Prosper's records show that Jones agreed to the promissory note on February 12, 2015, and Park agreed to the promissory note on June 8, 2017.  (*Id.* ¶¶ 18, 31.)

The promissory notes are bilateral agreements between each Plaintiff and WebBank.  (*See* Bryant Decl. Exs. D, H.)  Like the BRA, the promissory note to which Plaintiffs agreed contains a mandatory arbitration agreement ("Note Arbitration Agreement"), which also included an opt-out right neither Plaintiff exercised.  (*Id.* ¶¶ 18, 31; Exs. D, H ¶ 18.)  The Note Arbitration Agreement covers claims "arising from or relating" to the note between each Plaintiff and WebBank, any servicers of the note, or any subsequent holders of the note, as well as their "respective parents, subsidiaries, affiliates, predecessors, successors, and assigns."  (Bryant Decl. Exs. D, H ¶ 18(a)(ii), (iii).)  This agreement applies to Plaintiffs' claims against all Defendants because Prosper serviced and held Plaintiffs' note, and Velocity is Prosper's assign and holds the note.  (*See* Compl. ¶ 2 (alleging Prosper "sold" Plaintiffs' loans to Velocity), ¶ 14 (alleging "Prosper assigned the loan accounts of Plaintiffs . . . to Velocity"), ¶ 39 ("Each Class Member loan was sold to Prosper[.]"), ¶ 49 ("Prosper also serviced and administered each loan[.]"), ¶ 51 (identifying Velocity as Prosper's "assignee debt collector"), ¶ 62 (alleging that "PMI serviced the unlawful loan accounts), ¶ 173 (identifying Prosper as Velocity's "assignor").)

## III.   <u>LEGAL STANDARD</u>

The FAA "embodies a federal policy favoring arbitration."  *Drews Distrib. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001).  Thus, "[s]tate and federal courts must enforce

the [FAA] with respect to all arbitration agreements covered by that statute." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 530-31 (2012).  The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original).

The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract."  9 U.S.C. § 2.  Under the FAA, a court **must** compel arbitration if "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." *Abdul-Hasib v. Aerotek, Inc.*, No. MJG-17-1502, 2017 WL 5903555, at *2 (D. Md. Nov. 29, 2017) (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)).  In cases where the parties have agreed to arbitrate questions of arbitrability under a delegation clause, however, "the court may not pass upon the scope or validity of the arbitration agreement." *Lyles v. Chegg, Inc.*, No. RDB-19-3235, 2020 WL 1985043, at *3 (D. Md. Apr. 27, 2020) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)).

IV.   **ARGUMENT**

    A.   **The FAA Governs.**

The FAA governs this Motion because the transaction at issue involves interstate commerce and the parties expressly agreed the FAA applies.  It is well-settled that the FAA applies to contracts evidencing a transaction involving interstate commerce.  9 U.S.C. §§ 1, 2.  The individual transaction at issue need not have "any specific effect upon interstate commerce" to meet this threshold requirement. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (internal quotation marks omitted); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995) (interpreting the FAA's "involving commerce" provision as broadly as the phrase

"affecting commerce").  Instead, it is sufficient that the "general practice . . . bear on interstate commerce in a substantial way."  *Citizens Bank*, 539 U.S. at 57 (citing *Maryland v. Wirtz*, 392 U.S. 183, 196-97 n. 27 (1968)).

This case satisfies the FAA's minimal interstate commerce requirement.  Courts regularly recognize that contracts governing lending transactions between borrowers in one state, obtaining an extension of credit from an out-of-state entity, involve interstate commerce.  *See, e.g.*, *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005) (holding the "FAA's broad interstate commerce requirement is satisfied" because "the lending transactions were between . . . a Georgia resident and . . . a national bank located in South Dakota"); *Beachum v. Phillips*, No. 2:09-cv-00378, 2009 WL 3269047, at *3 (S.D. W. Va. Oct. 8, 2009) (finding interstate commerce requirement satisfied where the dispute involved loan agreements entered into between Virginia and West Virginia residents).  This is such a case. Plaintiffs are Maryland residents who applied through the online platform of PFL—a Delaware corporation with a principal place of business in California—to obtain a loan from a Utah bank (WebBank) that would be serviced by PMI, a Delaware corporation with its principal place of business in California.  (*See* Compl. ¶¶ 22-23; Bryant Decl. ¶ 3; Rome Decl. Ex. A; *supra* section II.C.3.)  This case involves interstate commerce, and therefore the FAA governs.[3]

### B.    Plaintiffs Agreed to the BRA Arbitration Agreement.

The first and only question before this Court is whether an agreement to arbitrate exists. That question must be answered in the affirmative—it is beyond dispute that Plaintiffs agreed to arbitrate their claims.  Paragraph 22 of the BRA contains an arbitration agreement that exists as a

---

[3] The BRA Arbitration Agreement and Note Arbitration Agreement (together the "Arbitration Agreements") also provide that "[t]he arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act . . . ."  (Bryant Decl. Exs. C, G ¶ 22(e).)

matter of applicable state law.  The Southern District of New York reached this conclusion and enforced the very same Arbitration Agreement in the BRA against a plaintiff who accepted it in the exact same way as Plaintiffs here, and this Court should do the same.  *Whitt*, 2015 WL 4254062, at *4 (enforcing BRA and compelling arbitration).  Moreover, Plaintiffs agreed for a second time to arbitrate any disputes related to their loans in the promissory notes setting forth the terms of those loans.  If for any reason the Court declines to enforce the BRA Arbitration Agreement, it should instead compel arbitration under the Note Arbitration Agreement.

        **1.**       **Maryland Law Determines Whether the Parties Agreed to Arbitrate Their Disputes.**

As explained in further detail below, under choice-of-law principles, Maryland law governs whether an agreement to arbitrate exists, but once the Court determines existence—as it should here—the choice-of-law clauses within the relevant agreements will govern all other disputes, including any disputes regarding validity or enforceability.

"To resolve questions of contract formation, this Court must apply state contract law." *Lyles*, 2020 WL 1985043, at *3; *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  "A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits."  *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013).  Here, the forum state is Maryland, which generally applies the law of the state where the contract was made, unless the parties selected the law of another state to govern.  *James v. Synovus Bank*, No. TDC-19-1137, 2020 WL 1479115, at *2 (D. Md. Mar. 26, 2020).  Here, while the parties agreed to choice-of-law clauses selecting the law of other states to govern their agreements, the "law of the state where the contract" was made ultimately governs whether the BRA Arbitration Agreement exists in the first place.  *Id.* ("[I]t is inappropriate to apply a term of the contract to the question of whether the parties agreed to the contract in the first place.").

"Where the contract is made is defined as where the last act is performed which makes the agreement a binding contract." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (internal quotation marks omitted). Here, the last act performed to make the BRA binding was performed in Maryland when each Plaintiff pressed the "Continue" button and accepted the terms of the BRA. (*See infra* at section IV.B.3; *see* Compl. ¶ 21 (alleging Plaintiffs reside in Maryland and "registered in Maryland for a loan from Prosper").) Thus, Maryland law applies to the narrow question of whether an agreement to arbitrate was formed.[4]

### 2.     Plaintiffs Accepted the BRA.

In Maryland, "[a] contract is formed when an unrevoked offer made by one person is accepted by another." *Cnty. Comm'rs for Carroll Cnty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377 (2008) (quoting *Prince George's Cnty. v. Silverman*, 58 Md. App. 41, 57 (1984)). Critically, "[a] manifestation of assent to be bound need not be in writing. It has long been settled that 'an acceptance may be indicated by acts as well as words.'" *Blue Bird, LLC v. Nolan*, No. 302920-V, 2009 WL 1498704 (Cir. Ct. Md. Apr. 28, 2009) (quoting *Duplex Envelope Co. v. Baltimore Post Co.*, 163 A. 688 (1933)). Consistent with these principles, "[c]ourts applying Maryland law have upheld clickwrap agreements—that is, agreements that require a customer to affirmatively click a box on the website acknowledging receipt of an assent to the contract terms before he or she is allowed to proceed using the website." *Lyles*, 2020 WL 1985043, at *3 (internal quotation marks omitted) (collecting cases); *Bishop v. Carrington Mortg. Servs., LLC*, No. RDB-

---

[4] Park's BRA has a Delaware choice-of-law clause. (Bryant Decl. Ex. G ¶ 19.) Jones's BRA has a Utah choice-of-law clause. (Bryant Decl. Ex. C ¶ 16.) Both Plaintiffs' promissory notes have Utah choice-of-law clauses. (Bryant Decl. Exs. D, H ¶ 16.) As noted, these clauses do not apply to the narrow question of whether an agreement to arbitrate exists under substantive federal arbitration law. Once it is found to exist, Utah and Delaware law will apply to every other substantive question in this case under the choice-of-law clauses.

20-2369, 2020 WL 7319252, at *5 (D. Md. Dec. 11, 2020) ("Courts applying Maryland law have upheld clickwrap agreements[.]") (also collecting cases).  In this regard, Maryland courts are part of the consensus of state and federal district courts that "have generally upheld clickwrap so long as it 'reasonably communicates' the existence of contract terms."  *Bishop*, 2020 WL 7319252, at *5 (quoting *Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 75 (2d Cir. 2017) (collecting cases)).

 Here, Plaintiffs could not have completed their loan applications unless they clicked a check box next to bold text indicating that clicking the box demonstrated their acceptance of the BRA.  (Bryant Decl. ¶¶ 12, 26.)  The same screen had a conspicuous hyperlink to the BRA for Plaintiffs to review.  (*Id.* ¶¶ 11, 25, Ex. A, E.)   Plaintiff Jones selected the acceptance box and pressed "Continue" to complete his loan application on February 10, 2015.  (Bryant Decl. ¶ 15.)  Plaintiff Park did the same on June 3, 2017.  (*Id.* ¶ 29.)  Thus, Plaintiffs agreed to the terms of the BRA, which includes an arbitration agreement at paragraph 22.  (*Id.* Exs. C, G ¶ 22.)

### 3.    Under the BRA, Plaintiffs Must Arbitrate Their Claims Against All Defendants.

The  BRA  Arbitration  Agreement  governs  disputes  between  Plaintiffs  and  all  three Defendants, as it specifically extends to claims between or involving Plaintiffs and "us."  (*Id.* Exs. C, G ¶ 22(a)(ii).)   The term "us" is defined to include PFL as well as its "parents" and "assigns." (*Id.*).  PMI is PFL's parent and an affiliate.  (Compl. ¶ 1, 24 (identifying PMI as the sole owner of PFL).)  And it is undisputed that Velocity is PFL's "assign."  (*See* Compl. ¶¶ 14, 51, 92-93, 173 (alleging PFL assigned Plaintiffs' loan accounts to Velocity); *see also* Bryant Decl. ¶¶ 19, 32.) Thus, an agreement to arbitrate exists as between Plaintiffs and Defendants.  *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 289-91 (4th Cir. 2020) (concluding that the plaintiff formed an agreement to arbitrate with a signatory's affiliate when the arbitration clause stated that the plaintiff agreed to arbitrate all disputes with the signatory's "subsidiaries, affiliates, agents, employees, predecessors

in interest, successors, and assigns"); *Grant-Fletcher v. Collecto, Inc.*, No. RDB-13-3505, 2014 WL 1877410, at *7-8 (D. Md. May 9, 2014) (non-signatory defendant that was assigned the plaintiffs' debt could enforce arbitration agreement that applied to "subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns" of the signatory defendant).

Even if Velocity were not a party to the BRA Arbitration Agreement, Plaintiffs would be required to arbitrate their dispute with it under the doctrine of equitable estoppel.  Maryland law recognizes "two related but independent bases for applications of equitable estoppel," and both allow Velocity to enforce the BRA Arbitration Agreement against Plaintiffs here*. Elder v. BMO Harris Bank*, No. JFM-13-3043, 2014 WL 1429334, at *1 (D. Md. Apr. 11, 2014).

*First*, "[t]he law is clear that a non-signatory to an arbitration agreement may enforce (or be bound by) the agreement's terms where the claims against the signatory and the non-signatory 'are based on the same facts and are inherently inseparable.'" *Jones v. Genus Credit Mgmt. Corp.*, 353 F. Supp. 2d 598, 602-03 (D. Md. 2005) (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000)); *see Elder*, 2014 WL 1429334, at *1 (equitable estoppel applies where the signatory alleges "substantially interdependent and concerted misconduct" by both a non-signatory and signatory).  Here, Plaintiffs' claims against Velocity are entirely derivative of and dependent on their claims against Prosper.  (Compl. ¶ 14 ("Prosper had no right to collect any money from Plaintiffs or any Class Member, and Velocity, as Prosper's assignee, has no such right either"); *id.* ¶ 93 (alleging that Velocity was not entitled to collect money from Plaintiffs "*as a result of Prosper's illegal, unlicensed activity*") (emphasis added).) Because Plaintiffs' claims against Prosper and Velocity are inextricably intertwined, Velocity could enforce the BRA Arbitration Agreement and compel the claims to arbitration even if it were not a party to it. *Jones*, 353 F. Supp. 2d at 602-03 (permitting non-signatory defendants alleged to

have "intertwining relationships" with signatory defendant to compel arbitration of claims against a plaintiff even though they were not a party to the original debt management agreement with arbitration clause ); *Notre Dame v. Morabito Consultants, Inc.*, 132 Md. App. 158, 182-83 (2000) (in case involving closely related claims against two defendants arising out of the same set of facts, the plaintiff "should not be permitted to assert the lack of a direct written contract" with the non-signatory defendant to avoid enforcement of the contract's terms).

*Second*, "[t]he doctrine of equitable estoppel permits non-signatories to enforce an arbitration provision . . . when a signatory must rely on the terms of the written agreement [containing the arbitration clause] in asserting [its] claims." *Lomax v. Weinstock, Friedman & Friedman, P.A.*, No. CCB-13-1442, 2014 WL 176779, at *3 (D. Md. Jan. 15, 2014) (quoting *Griggs v. Evans*, 205 Md. App. 64, 83 (2012)). Here, Plaintiffs' claims are premised on a challenge to the right they granted PMI in the BRA to serve as their attorney-in-fact to execute promissory notes on their behalf. (Compl. ¶¶ 35, 76-77, 81-83, 85, 153-154, 161-162, 171, 175, 186-187 (alleging that "Prosper's form adhesion loan documents included provisions" giving Prosper a power of attorney to sign a promissory note for Plaintiffs in violation of Maryland law).) Because their claims against Velocity are based on a term of the BRA, Plaintiffs are equitably estopped from denying the Arbitration Agreement therein as to Velocity. *See Meena Enters. v. Mail Boxes Etc., Inc.*, No. DKC 12-1360, 2012 WL 4863695, at *4 (D. Md. Oct. 11, 2012) (concluding that non-signatory could enforce arbitration clauses in franchise agreements because it would be unfair to allow the plaintiffs to assert claims that "make[] reference to, and presume[] the existence of" the agreements, but at the same time repudiate the arbitration clauses therein).

C.     **The BRA Arbitration Agreement Delegates All Gateway Disputes to the Arbitrator.**

Plaintiffs may raise disputes regarding the scope or enforceability of the BRA Arbitration Agreement, but such disputes can only be heard by the arbitrator in light of the delegation clauses to which the parties agreed.

Generally, the arbitrability of disputes is a "gateway question" a court decides. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). "That presumption can be overcome, however, where the parties 'clear[ly] and unmistakab[ly]' give the arbitrator responsibility for determining 'gateway' questions of arbitrability *via* a delegation provision." *Meena Enters.*, 2012 WL 4863695, at *5 (quoting *Rent-A-Center*, 561 U.S. at 66-68) (emphasis added). "Because a delegation provision itself constitutes a 'written provision . . . to settle by arbitration a controversy' under section 2 of the FAA . . . it must be enforced unless a party raises a *specific* challenge to its validity." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 68-70) (emphasis in original).

Defendants anticipate that Plaintiffs will assert the delegation clause is illusory because the BRA provides that PFL may modify its terms by providing notice to Plaintiffs (the "modification provision"). This challenge goes to the enforceability of the BRA as a whole and thus is reserved for the arbitrator. Even if it were not, such a challenge is foreclosed by applicable state law.

1.     **The Parties "Clearly and Unmistakably" Agreed to Arbitrate Arbitrability.**

Here, the BRA Arbitration Agreement contains not just one, but *two* clear delegation clauses delegating gateway disputes to the arbitrator. First, the BRA Arbitration Agreement delegates all gateway determinations as to the scope, validity, or enforceability of the Arbitration Agreement because it expressly incorporates the JAMS and AAA rules. (Bryant Decl. Exs. C, G ¶ 22(b).) Where there is, as here, express incorporation of those rules, "such provisions constitute 'clear and unmistakable evidence' of intent to arbitrate arbitrability," *Collins v. Discover Fin.*

*Servs.*, No. PX-17-03011, 2018 WL 6434503, at \*2 (D. Md. Dec. 7, 2018) (collecting cases), because the JAMS and AAA rules "expressly delegate arbitrability questions to the arbitrator." *Simply Wireless, Inc.*, *v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017), *abrogated on other grounds by Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019).[5]  Thus, all issues related to the scope of the BRA Arbitration Agreement, its enforceability, and/or its validity must be delegated to the arbitrator.  *See Collins*, 2018 WL 6434503, at \*2-3 (compelling arbitration in class action and holding that incorporation of AAA and JAMS rules required delegation of the plaintiff's arguments related to the scope of the arbitration clause to the arbitrator).

Second, the BRA Arbitration Agreement itself specifically requires that any claims or disputes related to its validity or enforceability be delegated to the arbitrator.  Section 22 of the BRA requires all "Claims" to be "resolved . . . by binding arbitration," and in turn defines "Claims" to include any "disputes about . . . the validity or enforceability of this Section 22," which is the BRA Arbitration Agreement.  (Bryant Decl. Exs. C, G ¶ 22(a)-(b).)  This type of delegation clause has also been upheld as a clear and unmistakable delegation of gateway issues to the arbitrator. *Meena*, 2012 WL 4863695, at \* 5-6 (arbitration agreement contained clear and unmistakable delegation provision where the parties agreed to arbitrate "claims regarding the validity, scope, and enforceability of this [arbitration agreement]") (emphasis omitted).

---

[5]  *See American Arbitration Association,* AAA Consumer Arbitration Rules R-14, https://www.adr.org/sites/default/files/Consumer-Rules-Web.pdf (providing the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim"); *JAMS*, JAMS Streamlined Arbitration Rules & Procedures Rule 8(b), https://www.jamsadr.com/rules-streamlined-arbitration/#Rule8 ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.").

Thus, the BRA Arbitration Agreement clearly and unmistakably delegates all gateway issues for decision by the arbitrator.  To the extent Plaintiffs argue that their lawsuit raises claims not within the scope of the BRA Arbitration Agreement or otherwise challenge its validity or enforceability, such arguments can only be heard by the arbitrator.

### 2. Plaintiffs Have Not Challenged the Delegation Clause Specifically.

As the Supreme Court has explained, any validity or enforceability challenge must be directed to the delegation clause specifically, not the arbitration agreement or underlying agreement as a whole.  *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 72-73.  Plaintiffs have not made a challenge with the required specificity here.  In addition to filing this lawsuit, Jones simultaneously filed a separate petition in Maryland state court seeking a declaration that his agreements to arbitrate his claims are unenforceable.  (Rome Decl. Ex. B (the "Petition").)[6]  In the Petition, Jones claims that the delegation clause in the BRA Agreement is "illusory" because "Prosper reserved the right for it to unilaterally change" the parties' agreements at any time.[7]  (*Id.* ¶ 41; *see id.* ¶¶ 10-12, 25-28, 40-41, 49-50 (alleging that any agreement to delegate arbitrability questions lacks consideration and thus does not exist).)  But this purported challenge to the delegation clause in the BRA Arbitration Agreement cannot be considered by the Court because it is effectively a challenge to the enforceability of the *entire* BRA.

---

[6] The Petition was filed under Md. Cts. & Jud. Proc. Code Ann. 3-208, a Maryland statute which authorizes parties to seek a court order to stay threatened arbitration proceedings. Defendants intend to seek dismissal of that petition in Maryland state court on several grounds.

[7] Jones also claims in the Petition that he did not agree to arbitrate because his promissory note was signed on his behalf by Prosper—acting in its capacity as his attorney-in-fact—which, according to Jones, is prohibited by Maryland law.  (Petition ¶¶ 31-35.)  This argument cannot apply to the BRA, which was not signed by Prosper on Jones's behalf.  Jones and Park expressly agreed to the BRA themselves.  Nonetheless, in the event Plaintiffs raise this argument against the BRA, Defendants reserve the right to address any and all arguments on Reply.

Under well-settled Supreme Court precedent, because an "arbitration provision is severable from the remainder of the contract," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2005), when "the crux of the complaint" about an agreement goes to the contract as a whole—as opposed to the arbitration clause alone—such a challenge must be decided by the arbitrator. *Id.* at 444 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1988)); *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 183-84 (4th Cir. 2013) ("A party challenging the enforceability of an arbitration clause under Section 2 of the FAA must rely on grounds that 'relate specifically to the arbitration clause and not just to the contract as a whole.'") (quoting *Snowden v. CheckPoint Check Cashing,* 290 F.3d 631, 636 (4th Cir. 2002)).  This is equally true where the arbitration agreement at issue is one to delegate threshold questions to an arbitrator.  *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 71-72; *id.* at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

In applying this test, courts look closely at the nature of the arguments against arbitration to determine whether they are specific to the arbitration clause at issue or apply to the contract as a whole. For instance, in *Muriithi v. Shuttle Express, Inc.*, the Fourth Circuit Court of Appeals applied these rules and reversed a district court's order denying arbitration, holding that it was improper for the district court to consider the plaintiff's argument that a one-year statute of limitations provision was unconscionable because that limitation applied to the entire agreement and not the arbitration clause specifically.  712 F.3d at 183-84.  In so doing, the Fourth Circuit followed a long string of its cases affirming the same principles, explaining:

> In view of [the court's] gatekeeping function, the scope of a motion to
> compel arbitration is restricted to consideration of challenges specific to
> the arbitration clause.  Thus, absent a contrary agreement . . . general

> contract defenses that are applicable to the entire contract . . . are reserved
> for the forum in which the dispute ultimately will be resolved.

*Id.* at 184 (citing *Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir. 1989) and *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002)).

The Fourth Circuit has not addressed whether a challenge to arbitration based on a change-of-terms provision that applies to an entire agreement should be resolved by the court or an arbitrator under *Buckeye* and its progeny. But the Fifth and Tenth Circuits have addressed this issue, and both found that an illusory challenge based on a defendant's contractual right to modify terms is an enforceability challenge to the underlying agreement as a whole that is reserved for the arbitrator. *See Arnold*, 890 F.3d at 554 (5th Cir. 2018) (holding argument that the defendant's right to modify terms without notice rendered arbitration agreement illusory is a validity challenge to the entire arbitration agreement rather than the delegation clause); *Cox*, 835 F.3d at 1211 (holding the plaintiffs' argument that the defendant's right to change the agreement rendered it illusory "is a challenge to the entire agreement" that "must be resolved by the arbitrator" under *Prima Paint* and *Buckeye*). These conclusions are unsurprising. Cases applying Supreme Court precedent "overwhelmingly reach the conclusion that the issue of illusoriness of the whole contract must be resolved by the arbitrator." *Damato v. Time Warner Cable, Inc.*, No. 13-CV-994 (ARR)(RML), 2013 WL 3968765, at *6 (E.D.N.Y. July 31, 2013) (holding plaintiffs' argument that unilateral modification provision rendered arbitration agreement illusory must be referred to arbitrator because it challenged the validity of the contract as a whole).

As in *Arnold* and *Cox*, here "it is undeniable that Plaintiffs' 'illusory' argument attacks the entire [BRA], rather than just the arbitration provision[], because the argument is based on language outside th[at] provision[]," i.e., the modification provision in the BRA. *Cox*, 835 F.3d at 1211. Such a challenge must be resolved by the arbitrator because it goes to "the validity of the

underlying contract as a whole" and not "the validity of the arbitration agreement in particular."

*Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 671-72 (4th Cir. 2016); *Muriithi*, 712 F.3d at 184

(finding challenge to arbitration clause based on one-year limitations period applicable to entire

agreement was not specific to the arbitration clause, and thus could not be addressed by the district

court); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001) (reversing

district court holding that arbitration agreement was unenforceable due to allegations of fraud

because "[c]laims of fraud applicable to the entire contract are generally resolved by an

arbitrator"); *Cox v. Time Warner Cable, Inc.*, No. 3:12-cv-03333-JFA, 2013 WL 5469992, at *4

(D.S.C. Sept. 30, 2013) (concluding that, under Supreme Court and Fourth Circuit precedent,

argument that parties never agreed to arbitrate because the defendant retained right to modify

contract belonged to arbitrator to resolve because illusory challenge was one to entire contract).

### 3.        Even a Specific Challenge to the Delegation Clause Would Fail.

Even if the Court considers Plaintiffs' illusory argument to be a specific challenge to the

delegation clause that it must resolve—which it should not—the challenge fails under applicable

state law.  Judging by Jones's state court Petition to stay arbitration, Plaintiffs' illusory challenge

relies on *Cheek v. United Healthcare of the Mid-Atl., Inc*, 378 Md. 139, 149 (2003), a Maryland

Court of Appeals decision concluding that an arbitration agreement containing a unilateral change-

in-terms provision was illusory.  The *Cheek* court's decision relied on its determination that an

arbitration agreement is severable from the underlying contract and must be supported by

consideration independent of that contract.  *Id.* at 153.

As explained below, this challenge fails for several reasons.  *First*, while Maryland law

governs the limited issue of whether an agreement to arbitrate exists in the first place, it does not

govern validity or enforceability challenges to the BRA Arbitration Agreement's delegation

clause.  Plaintiffs agreed to Delaware and Utah law choice of law clauses that apply to these

20

challenges, and Delaware and Utah courts do not follow the approach set forth in *Cheek*. *Second*, even if Maryland law applied, *Cheek* is plainly distinguishable, as that case involved a change-in-terms provision **within the arbitration agreement**, whereas the challenged provision here is not in or specifically directed to the BRA Arbitration Agreement or the delegation clause within it.

> (a)   **Utah and Delaware Law Govern Any Challenge to the BRA Delegation Clause.**

Under Maryland choice-of-law rules, (*see supra* section IV.B.1), contracting parties may "specify in their contract that the laws of a particular State will apply in any dispute over the validity, construction, or enforceability of the contract." *Optical Mechs., Inc. v. Cymbioms Corp.*, No. GJH-20-1947, 2021 WL 461796, at *4 (D. Md. Feb. 9, 2021) (Hazel, J.) (quoting *Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 818 (D. Md. 2010)).  Jones's BRA contains a Utah choice-of-law clause and Park's BRA contains a Delaware choice-of law clause.  (Bryant Decl. Exs. C, G ¶ 19.)  Such clauses are disregarded under Maryland law only if "the choice of law jurisdiction has no substantial relationship to the transaction, or there is a fundamental policy difference in the laws of another jurisdiction with a more substantial interest in the parties or the transaction." *Brito v. Major Energy Elec. Servs.*, LLC, No. ELH-20-0230, 2021 WL 1060283, at *11 (D. Md. Mar. 18, 2021) (internal quotation marks and citation omitted).

The selected jurisdictions have a substantial relationship to the challenged loans.  The bank (WebBank) that originated and funded Jones's loan, which was listed on the Prosper marketplace pursuant to the BRA, is headquartered in Utah, and PFL, a party to the BRA, is incorporated in Delaware.  (*See supra* section II.A); *Ciena Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000) (under Maryland choice-of-law rules, "a party's state of incorporation provides the necessary 'substantial relationship' for application of its laws"); *Taylor v. Lotus Dev. Corp.*, 906 F. Supp. 290, 298 (D. Md. 1995) (same as to principal place of business).  Further, the *Cheek* rule is not a

"fundamental public policy" of Maryland.  Maryland courts find laws to reflect fundamental public

policies only where the Maryland legislature has expressly indicated as much.  *See Kunda v. C.R.*

*Bard, Inc.*, 671 F.3d 464, 468 (4th Cir. 2011) (explaining courts find laws to be fundamental public

policies where the statute contains "an express statement the law is a fundamental public policy").

That is not the case here, and there is no basis to assert that a narrow doctrine involving

consideration in arbitration is a fundamental public policy of Maryland.  Thus, if it reaches

Plaintiffs' illusory challenge, the Court should apply Utah law to Jones's BRA Arbitration

Agreement and Delaware law to Park's.[8]

**(b)**   **The BRA Provides Consideration for the Delegation Clause.**

The delegation clause is enforceable under Utah and Delaware law because it is supported

by the consideration from the BRA.  In *Cox*, the Tenth Circuit explained that, under general

contract principles, "an illusory promise in just one provision does not make the contract

unenforceable.  Consideration may appear in a separate provision."  835 F.3d at 1209.  The law in

Utah and Delaware is no different—the underlying agreement can serve as consideration for the

parties' arbitration agreement.  *See Wynne v. Am. Express Co.*, No. 2:09-CV-00260-TJW, 2010

WL 3860362, at *6 (E.D. Tex. Sept. 30, 2010) (under Utah law, "the underlying agreement can

serve as the consideration for a party's promise to arbitrate") (citing *Tanner v. Provo Reservoir*

*Co.*, 289 P. 151, 154 (Utah 1930)); *Pick v. Discover Fin. Servs., Inc.*, No. CIV. A. 00-935-SLR,

---

[8]  Unlike the narrow question of whether an agreement to arbitrate exists in the first place, which is a question of Maryland law (*supra* at section IV.B.1), these enforceability challenges must be determined under the legal regimes the parties selected through choice-of-law clauses once the Court determines that the BRA Arbitration Agreements exist.

2001 WL 1180278, at *5 (D. Del. Sept. 28, 2001) (arbitration clause need not be supported by independent consideration, so long as underlying contract has consideration).[9]

Pursuant to the BRA, Plaintiffs listed their loan requests on the Prosper marketplace in order to receive sufficient funding commitments to cause WebBank to originate and fund them loans and promised to arbitrate arbitrability.  (Bryant Decl. Exs. C, G ¶¶ 3, 5.)  PFL provided Plaintiffs with access to the Prosper platform—which allowed Plaintiffs to register for the loans— and made a return promise to arbitrate.  (*Id.*)  Thus, there is sufficient consideration underlying the BRA to support the delegation clause.[10]  *See Pick*, 2001 WL 1180278, at *5 (credit card agreement with unilateral modification provision was supported by consideration because, pursuant to it, the plaintiff received the benefits of the card and the defendant gained the plaintiff's account).

### (c)     The Delegation Clause Is Not Illusory for Additional Reasons.

Apart from being supported by consideration underlying the BRA, the Court should enforce the delegation clause under four well-settled principles of Utah and Delaware law.  *See Diatect Int'l Corps. v. Organic Materials Rev. Inst.*, No. 2:05 CV 00465, 2007 WL 752165, at *2 (D. Utah Mar. 7, 2007) (explaining that Utah law "disfavors" the doctrine that "illusory promises are devoid of consideration and cannot form the basis of bilateral contracts"); *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992) (courts applying Delaware law resist an interpretation of a contract that "render[s] any of its provisions illusory or meaningless").

*First*, Plaintiffs are equitably estopped from repudiating the enforceability of the delegation clause.  Equitable estoppel under Utah law requires "conduct by one party which leads another

---

[9] Moreover, consideration exists even if Maryland law applies.  (*Infra* at section IV.C.3(d).)

[10] To the extent Plaintiffs contend that there is no consideration to support the *BRA*, that claim must be decided by the arbitrator.  (*See supra* at section IV.C.2.)

party, in reliance thereon, to adopt a course of action resulting in detriment or damage if the first party is permitted to repudiate his conduct." *United Am. Life Ins. Co. v. Zions First Nat. Bank*, 641 P.2d 158, 161 (Utah 1982).  This standard is satisfied where "when one party accepts the benefit of the bargain and performs under its terms only to later question the validity of the instrument." *Diatect*, 2007 WL 752165, at *5 (citing *Tanner,* 289 P. at 154).  The same is true in Delaware.  *See Plaze, Inc. v. Callas*, No. 2018-0721-TMR, 2019 WL 1028110, at *8 (Del. Ch. Feb. 28, 2019) ("Delaware courts apply equitable estoppel to prevent someone from accepting the benefits of a contract without accepting its obligations.").  Here, Plaintiffs received the benefits of the bargain under the BRA.  Pursuant to that agreement, PFL permitted Plaintiffs to make loan requests or "listings" on the Prosper marketplace so that they could obtain sufficient funding commitments from investors to cause WebBank to lend to them.  (*See* Compl. ¶¶ 99, 109 (alleging that Plaintiffs received loans "through Prosper"); Bryant Decl. Ex. C ¶ 3 (describing listing process and explaining that "[i]f your listing receives sufficient commitments to fund, WebBank will originate a loan").)  Plaintiffs cannot now disclaim the delegation clause in the BRA after accepting these benefits under the same agreement.  *See Diatect*, 2007 WL 752165, at *3 (holding that the defendant was equitably estopped from challenging the validity of forum selection clause in manual that "granted the company *carte blanche* to" revise it).  Put another way: having registered for and obtained $15,000 loans years ago, Plaintiffs cannot now complain (for the first time) that the agreements that got them those funds are illusory, particularly when they had the right to opt out of arbitration, but declined to do so.  (*See* Bryant Decl. ¶¶ 18, 30.)  Equitable estoppel precludes this gambit and requires enforcement of the delegation clause.

　　*Second*, Utah and Delaware law impose an implied covenant of good faith to prevent a provision granting one party discretion from creating an illusory promise.  *See Res. Mgmt. Co. v.*

*Weston Ranch & Livestock Co., Inc.*, 706 P.2d 1028, 1038 (Utah 1985) (holding that provision granting party the right to terminate contract if—in its "sole discretion"—it made economic sense to do so, "was circumscribed by the requirement that [the party] exercise [that discretion] in good faith" and therefore agreement was not illusory); *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146-47 (Del. Ch. 2009) ("When a contract confers discretion on one party, the implied covenant requires that the discretion be used reasonably and in good faith.").  In particular, courts applying state law that likewise recognizes the implied covenant have concluded that an arbitration agreement subject to a change-in-terms provision is not illusory because the party with the right to modify the agreement is constrained by the implied covenant.[11]  The Court should likewise conclude here that the implied covenant limits PFL's authority to modify the delegation clause, and that the BRA therefore is not illusory because any amendment must be made in good faith. This outcome would be wholly consistent with the course of dealing here: Prosper has never modified Plaintiffs' Arbitration Agreements or, indeed, any portion of their BRAs, as evidenced by the fact that Prosper is seeking to compel arbitration under the original terms to which Plaintiffs agreed.  (Bryant Decl. ¶ 33.)

---

[11] *See, e.g.*, *Chess v. CF Arcis IX LLC*, No. 20-CV-01625-CRB, 2020 WL 4207322, at *9-10 (N.D. Cal. July 22, 2020) (unilateral amendment provision did not render arbitration agreement illusory because the court can read the implied covenant into the contract); *Valle v. ATM Nat., LLC*, No. 14-cv-7993 (KBF), 2015 WL 413449, at *5 (S.D.N.Y. Jan. 30, 2015) (change-in-terms provision did not render arbitration agreement illusory because implied covenant constrained the defendant's discretion); *see also Markham v. Bradley*, 173 P.3d 865, 872 (Utah 2007) (imposing implied covenant on real estate sales contract to avoid conclusion that promise to sell was illusory because contract granted seller discretion to cancel the sale if the buyer's disclosures were "not acceptable"); *Charlotte Broad., LLC v. Davis Broad. of Atlanta, L.L.C.*, No. 13C-04-143-WCC CCLD, 2015 WL 3863245, at *7 (Del. Super. Ct. June 10, 2015), *aff'd*, 134 A.3d 759 (Del. 2016) (provision permitting parties to terminate agreement in "sole discretion" was limited by the implied covenant to only permit termination "for the right reason").

*Third*, apart from applying equitable estoppel and the implied covenant to enforce the delegation clause, the Court should conclude that it is not illusory because PFL is required to provide notice to Prosper users of any material changes it makes to the BRA under the modification provision.  (*See* Bryant Decl. Ex. C ¶ 14 (requiring Prosper to give notice of material changes to the BRA). Ex. G ¶ 13 (same); *see First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*, No. 2:15-cv-00229-DN, 2016 WL 6902473, at *23-24 (D. Utah Nov. 23, 2016) ("*First American*"); *infra* section IV.C.3(d) (citing cases finding notice to be sufficient to prevent finding of illusory promises under Maryland law).  In *First American*, for example, the fact that an employee handbook with a modification clause required (i) the employer to give notice of any changes to the handbook and (ii) the employee to review any such updates, insulated the handbook from an illusory challenge.  2016 WL 6902473, at *23-24.  No advance notice was required to create binding obligations on the employer.  *See id.*  The BRA incorporates the same notice scheme.  It requires PFL to give a user "notice of material changes to t[he] Agreement . . . in the manner" set forth in the agreement, which includes email, messages to the user's Prosper message inbox, posting to the user's Prosper account, posting on the Prosper website, U.S. mail, or any other means authorized by the user.  (Bryant Decl. Exs. C ¶ 14, G ¶ 13.)  And Park explicitly agreed that it is his "responsibility to monitor these areas."  (*Id.* G ¶ 15.)  Accordingly, the Court should conclude that the delegation clause is not illusory because PFL's right to modify the BRA is circumscribed by the requirement that it provide notice to Prosper users of any changes thereto.

*Fourth*, even if the modification provision did make the delegation clause illusory, the Court should impose appropriate limitations on it to avoid that result.  Under Utah and Delaware law, "[a]n invalid term of an otherwise valid contract, if severable, will not defeat the contract." *Hildreth v. Castle Dental Ctrs., Inc.*, 939 A.2d 1281, 1283–84 (Del. 2007); *see VICI Racing, LLC*

*v. T-Mobile USA, Inc.*, 763 F.3d 273, 285 (3d Cir. 2014) (district court properly severed ambiguous contract term and enforced remainder of contract under severability clause permitting invalid provisions to be severed and replaced by a valid provision matching the parties' intent); *Bloom Master Inc. v. Bloom Master LLC*, 442 P.3d 1178, 1184 (Utah Ct. App. 2019) (stating "contract provisions are severable if the parties intended severance at the time they entered into the contract"). The BRA provides that "[i]f any part of this Agreement is determined to be invalid or unenforceable under applicable law, then the invalid or unenforceable provision will be deemed superseded by a valid enforceable provision that most closely matches the intent of the original provision, and the remainder of the Agreement shall continue in effect." (Bryant Decl. Ex. C ¶ 19, Ex. G ¶ 19.) Thus, the Court should sever the modification provision and replace it with a revised clause with sufficient limitations to prevent the delegation clause from being illusory.

**(d)      The Delegation Clause Is Not Illusory Under Maryland Law.**

Even if the Court concludes that Maryland applies to Plaintiffs' illusory challenge to the delegation clause, that challenge still fails because a change-in-terms provision only renders an agreement to arbitrate illusory if it is contained within the arbitration agreement itself. The change-in-terms provision of the BRA does not meet this requirement.

In *Cheek*, the Maryland Court of Appeals declined to enforce an arbitration agreement because a provision **<u>within the arbitration agreement</u>** granting the defendant the unilateral right to modify the arbitration agreement without notice rendered the defendant's promise to arbitrate illusory. *Cheek*, 378 Md. at 149. The court explained that because an "arbitration clause is a severable part of the contract, the "consideration for an underlying contract" cannot also "serve as consideration for an arbitration agreement within the contract." *Cheek*, 378 Md. at 149. It emphasized that "looking beyond" the arbitration agreement to the underlying employment

contract between the parties would require the court to "disregard the narrow scope of [its] role" to determine the enforceability of the arbitration agreement. *Id.* at 154.

Contrary to what Plaintiffs claim, *Cheek* does not support invalidating the delegation clause in this case because the challenged provision here is not contained within or specifically directed at the BRA Arbitration Agreement. Following *Cheek*, both the Fourth Circuit and courts within this district have found that the decision is limited to instances in which a modification clause is contained within and specifically directed at an arbitration agreement. This distinction follows from the *Cheek* court's recognition that an arbitration clause is severable—given that is the case, a term outside of the clause cannot be used to invalidate it.

In *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 542, 544 (4th Cir. 2005), the Fourth Circuit distinguished *Cheek* in reversing the district court's determination that the arbitration agreement at issue was not supported by consideration. There, the plaintiff agreed to an arbitration agreement and a separate dispute policy, which it retained the right to modify without notice. *Hill*, 412 F.3d at 542. The final step in the policy was binding arbitration, but the court nonetheless concluded that, under *Cheek*, it was constrained to consider only the "four corners" of the arbitration agreement before it. *Id.* at 542, 544. Since the arbitration agreement itself did not contain a change-in-terms provision, the Fourth Circuit held that the parties' mutual promises to arbitrate any disputes provided sufficient consideration for the agreement. *Id.* at 543-44.

Applying the principles set forth in *Hill* and *Cheek*, Judge Chuang recently rejected the exact same argument Plaintiffs advance in this case. In *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 458 (D. Md. 2020), the plaintiff resisted arbitration on the basis that the terms and conditions containing two arbitration clauses to which he agreed also had a unilateral modification provision. Judge Chuang explained that "unlike in *Cheek*, where the unilateral right to modify the contract

28

was contained in, and applied specifically to, the arbitration provision, the modification provision in *Hill* was outside the confines of the arbitration clause and therefore did not affect the question of consideration." *Cherdak*, 437 F. Supp. 3d at 458.  He concluded that where the modification provision is not contained within the arbitration clause, the defendant's right to modify the agreement containing the arbitration clauses "does not constitute an illusory promise under the [a]rbitration [c]lauses that renders those provisions unenforceable." *Id.* at 459.  Thus, the parties' mutual promises to arbitrate their disputes constituted sufficient consideration to support the arbitration agreement.  *Id.* at 456.

The Court should reach the same conclusion here.  As in *Cherdak,* the modification provision in the BRA is not contained within and does not apply specifically to the delegation clause.  Thus, it cannot support a conclusion that the BRA Arbitration Agreement is illusory.  To conclude otherwise and invalidate the BRA Arbitration Agreement based on the modification provision would require the Court to go beyond the "four corners" of the BRA Arbitration Agreement, which *Cheek* and *Hill* forbid.  *Hill*, 412 F.3d at 544; *see also Noohi v. Toll Bros.*, 708 F.3d 599, 609 (4th Cir. 2013) (in evaluating whether there is sufficient consideration for an arbitration provision under Maryland law, a court may not "look outside that provision").  Like the arbitration agreement Judge Chuang upheld in *Cherdak*, the BRA Arbitration Agreement also contains a mutual agreement to arbitrate claims that constitutes sufficient consideration to support the agreement.  Thus, the BRA Arbitration Agreement is not illusory and must be enforced.  *Hill v.* 412 F.3d at 544 (finding sufficient consideration where both parties to the arbitration agreement were unambiguously bound to arbitrate all claims save certain enumerated exceptions).

*Cheek* is also simply inapplicable to the BRA because unlike the unilateral modification clause at issue in *Cheek*, the modification clause in the BRA requires PFL to provide notice of any

material changes.  (*See supra* section IV.C.3(c).)  Maryland courts have distinguished *Cheek* on exactly this basis.  As one court explained, the requirement to provide notice meant that the defendant did "not have unfettered discretion to alter or rescind the arbitration agreement" and therefore created a binding obligation to submit to arbitration.  *Holloman v. Cir. City Stores, Inc.*, 391 Md. 580, 594 (2006) (rejecting the argument that under *Cheek* notice does not provide consideration); *see Harby ex rel. Brooks v. Wachovia Bank, N.A.*, 172 Md. App. 415, 418 (2007) (holding that arbitration clause in agreement with modification clause was enforceable because the bank agreed to give notice of any changes).  Thus, the notice PFL is required to provide regarding any changes in the BRA provides sufficient consideration to support the delegation clause.

Not only is *Cheek* inapplicable, but the almost twenty-year-old decision did not consider whether the arbitration agreement it found to be illusory should nonetheless be enforced under the doctrines of equitable estoppel and the implied covenant of good faith and fair dealing.  While these doctrines were not raised to the *Cheek* court, both are well-recognized under Maryland law, which like Utah and Delaware law, generally "prefer[s] a construction [of a contract] which will make the contract effective rather than one which will make it illusory or unenforceable."  *Kelley Constr. Co. v. Wash. Suburban Sanitary Comm'n*, 247 Md. 241, 247, 230 (1967) (internal citation and quotation omitted) (noting that "courts will search to find mutuality"); *see Savonis v. Burke*, 241 Md. 316, 319 (1966) ("Equitable estoppel operates as a technical rule of law to prevent a party from asserting his rights where it would be inequitable and unconscionable to assert those rights.") (citation omitted); *Questar Builders, Inc. v. CB Flooring, LLC*, 410 Md. 241, 273 (2009) ("Maryland contract law generally implies an obligation to act in good faith and deal fairly with the other party or parties to a contract.").  For example, in *Questar*, the court declined to find that a termination for "convenience" clause was illusory under *Cheek* by applying the implied covenant

to require that the party's unilateral termination right be exercised in good faith.  410 Md. at 279.

And Maryland courts recognize that where (as here) a party accepts the benefits of an agreement,

that party is equitably estopped from disclaiming its obligations.  *See, e.g., Mowbray v. Zumot*, 536

F. Supp. 2d 617, 622 (D. Md. 2008).  Thus, even if the Court finds *Cheek* applicable to the BRA,

it should still enforce the delegation clause by applying equitable estoppel or the implied covenant.

     **D.**     **Even if the BRA Arbitration Agreement Did Not Delegate Gateway Issues, the Court Should Still Compel Arbitration Because All of Plaintiffs' Claims Are Within the Arbitration Agreement's Broad Scope.**

As explained above, the Court should not consider whether Plaintiffs' claims are within

the scope of the BRA Arbitration Agreement because the parties delegated that question to the

arbitrator.  But even if the Court concludes otherwise and undertakes that analysis, the result would

be the same: Plaintiffs are required to arbitrate their claims against Defendants because they are

all within the BRA Arbitration Agreement's broad scope.

Given the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), there is a "heavy presumption of

arbitrability" requiring that "when the scope of the arbitration clause is open to question, a court

must decide the question in favor of arbitration."  *Peoples Sec. Life Ins. Co. v. Monumental Life*

*Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989).  "A court should not deny a request to arbitrate an

issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of

an interpretation that covers the asserted dispute.'"  *Drews Distrib., Inc. v. Silicon Gaming, Inc.*,

245 F.3d 347, 349-50 (4th Cir. 2001) (quoting *United Steelworkers of Am. v. Warrior & Gulf*

*Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

The BRA Arbitration Agreement first covers any dispute "arising from or relating to . . .

the relationship between you and us."  (Bryant Decl. Exs. C, G ¶ 22(a)(iii).)  The Fourth Circuit

has recognized that a clause covering all claims "arising from or related to" a relationship between

the parties—is "very broad" and "establishes that the arbitration clause was intended to apply to **all conflicts between the parties** . . . ."  *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998) (emphasis added).  As noted above, "us" includes Prosper and its assignee, Velocity.  (*See supra* II.B.)  Therefore, it is clear that the dispute between the parties reflected in this lawsuit is covered by the BRA Arbitration Agreement  *See Cara's Notions, Inc.*, 140 F.3d at 568 (arbitration clause that extended to "[a]ny controversy or claim arising out of or relating to . . . any aspects of the relationship" included conflicts beyond the agreement containing the arbitration clause and regarding a separate store  that was governed by a separate contract between the parties that lacked an arbitration clause).

Park's BRA Arbitration Agreement also covers any dispute "arising from or related to this Agreement."  (Bryant Decl. Ex. G ¶ 22(a)(iii).)  Jones's BRA Arbitration Agreement similarly covers any dispute "arising from or related to this Note."  (Bryant Decl. Ex. C ¶ 22(a)(iii).)  The Fourth Circuit has held that an arbitration clause covering all claims "arising out of or related to" the agreement containing the arbitration clause means exactly that.  *Drews*, 245 F.3d at 350; *see Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (an arbitration clause covering all claims "arising from or related to" the agreement containing the arbitration clause "render[s] arbitrable all disputes having a significant relationship to the" agreement, "regardless of whether those claims implicate[] the terms of the" agreement).  Each of Plaintiffs' claims is predicated on their assertion that PMI illegally exercised its rights to execute Plaintiffs' promissory notes on their behalf, (Compl. ¶¶ 11, 13-14, 76-77, 81-85, 137-144, 153, 161-162, 171, 175, 186-187, 194—196, 198-200, 205-209), a power granted to PMI in the BRA. (Bryant Decl. Exs. C ¶ 24, G ¶ 25.)  Because Plaintiffs' claims would not exist but for PMI's exercise of the power granted by the BRA in executing their notes, the claims are within the scope

32

of the BRA Arbitration Agreement. *See Long v. Silver*, 248 F.3d 309, 318-19 (4th Cir. 2001) (claims had "significant relationship" to agreement where they turned on the existence of rights granted and duties created under the agreement).

"In light of the expansive text of the arbitration agreement" in the BRA, it is more than "susceptible of an interpretation" that covers Plaintiffs' claims. *Mey*, 971 F.3d at 294 (internal quotation marks omitted). Therefore, should the Court undertake this analysis, it "must enforce the contract according to [its] terms" and compel arbitration of Plaintiffs' claims. *Id.* at 295 (internal quotation marks omitted).

### E.   Alternatively, Plaintiffs' Claims Are Also Subject to Arbitration Under Their Promissory Notes.

As detailed above, Plaintiffs agreed to the BRA Arbitration Agreement, which contains a delegation clause reserving all disputes involving the scope, validity, or enforceability of that agreement for the arbitrator. (*See supra* section IV.B.) The Court should therefore compel Plaintiffs' claims to arbitration. If the Court nonetheless concludes that the BRA Arbitration Agreement is unenforceable for any reason, Plaintiffs remain bound by the second broad arbitration agreement they agreed to in their promissory notes. The Note Arbitration Agreement explicitly extends to the parties in this matter (*see supra* section III.C.3) and, given its broad scope—requiring arbitration of any disputes "arising from or relating to this Note or the relationship between you and me" (Bryant Decl. Exs. D, H ¶ 18(a)(iii))—covers the asserted claims for the same reasons the BRA Arbitration Agreement does (*see supra* section IV.D).

Like the BRA Arbitration Agreement, the Note Arbitration Agreement also contains a delegation clause. (Bryant Decl. Exs. D, H ¶ 18(a)(iii) (requiring arbitration of any "disputes about the validity or enforceability of this Note or the validity or enforceability of this Section"), (b) (incorporating JAMS and AAA rules).) Unlike the BRA, however, the promissory note does not

permit PFL to amend the agreement with notice.  Instead, it provides that "[n]o provision of this Note shall be modified or limited except by an agreement signed by both you and me."  (Bryant Decl. Exs. D, H ¶ 17.)  Therefore, Plaintiffs' argument that the change-in-terms provision renders their agreement to arbitrate illusory simply does not apply to the delegation clause in the Note Arbitration Agreement.

Plaintiffs may instead claim, as Jones does in the Petition, that the delegation clause is unenforceable because their Notes were signed by PMI on their behalf, acting in its capacity as their attorneys-in-fact.  According to Plaintiffs, this violated the provision of the CLEC providing that  "[a]n agreement, note, or other evidence of a loan may not contain . . . [a] provision by which a person acting on behalf of a holder of the agreement, note, or other evidence of the loan is treated as an agent of the borrower in connection with its formation or execution."  Md. Code Ann., Com. Law § 12-1023(b)(2)(iv); (*see* Petition ¶¶ 31-35).

This argument fails.  Like Plaintiffs' illusory challenge, their power of attorney challenge can only be heard by the arbitrator because it is an enforceability challenge that goes to the entirety of their promissory notes, and not the delegation clause specifically.  (*See supra* at section IV.C.2 (collecting cases).)  Indeed, this power of attorney challenge forms the basis of their claims in this case.  One of two overarching theories driving Plaintiffs' complaint is that Defendants were "never entitled" to collect any money from them because their promissory notes were "illegally" signed by PMI on their behalf.  (Compl. ¶¶ 11, 13-14, 76-77, 81-85, 137-144, 153, 161-162, 171, 175, 186-187, 194—196, 198-200, 205-209.)  While the Petition attempts to repackage this challenge as one to the delegation clause (*see* Petition ¶¶ 10-11), the Court *cannot* resolve it without making a determination as to the enforceability of Plaintiffs' promissory notes.  Under the FAA, such an inquiry is impermissible for the Court and must be left for the arbitrator.  *See Buckeye*, 546 U.S.

at 445; *Hayes*, 811 F.3d at 671; *Muriithi*, 712 F.3d at 183-84; *Cheek*, 378 Md. at 149 (Courts "must not stray into the merits of any underlying disagreements. To do so could eclipse the role of the arbitrator, should a valid agreement exist, and therefore run afoul of strong Federal . . . policies favoring arbitration as a viable method of dispute resolution.").

Moreover, even if the Court were to consider this enforceability challenge—which the FAA forbids—it fails because Maryland law, and the CLEC specifically, do not apply.  Plaintiffs' promissory notes contain choice-of-law clauses selecting *Utah* law.  (Bryant Decl. Exs. D, H ¶ 16 ("This Note is governed by federal law and, to the extent that state law applies, the laws of the State of Utah."); *supra* at IV.C.3(a) (enforceability challenges governed by choice-of-law clause).)

### F. The Court Should Dismiss or, Alternatively, Stay This Case Pending Arbitration.

Because the parties entered into an Arbitration Agreement that delegates gateway questions to the arbitrator, the Court should compel arbitration and dismiss the action.  9 U.S.C. § 4. Dismissal is proper because since "the parties have delegated the issue of arbitrability to an arbitrator, there is nothing further for this Court to decide."  *Lyles*, 2020 WL 1985043, at *4 (enforcing arbitration agreement dismissing case without prejudice); *see Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709-10 (4th Cir. 2001).  Alternatively, the Court should stay all proceedings pending resolution of the arbitration.  *See* 9 U.S.C. § 3.

## V. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant Defendants' motion to compel arbitration and dismiss this case while arbitration is pending.

Dated:  April 30, 2021

/s/ Matthew P. Previn
Matthew P. Previn (Bar No. 16786)
BUCKLEY LLP
1133 Avenue of the Americas, Suite 3100
New York, NY 10036
mprevin@buckleyfirm.com
Tel:(212) 600-2400

Michael A. Rome (*Pro Hac Vice*)
BUCKLEY LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
mrome@buckleyfirm.com
Tel: (310) 424-3900

Lauren L. Erker (*Pro Hac Vice*)
BUCKLEY LLP
201 Mission Street, 12th Floor
San Francisco, CA 94105
lerker@buckleyfirm.com
Tel:(415) 619-3500

*Attorneys for Defendants Prosper*
*Marketplace, Inc., Prosper Funding, LLC, and*
*Velocity Investments, LLC*