IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| QUINCY JONES, et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. JKB-21-0893 |
| PROSPER MARKETPLACE, INC. et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Quincy Jones, Dae Park, and Shahid Khan's Motion for Reconsideration. (Recons. Mot., ECF No. 27.) Plaintiffs seek partial reconsideration of the Court's March 21, 2022 Memorandum and associated Order, in which the Court consolidated three cases,[1] granted Defendants' Motions to Compel Arbitration, denied Plaintiffs' Motions to Certify Questions, and stayed the consolidated cases. (Mem., ECF No. 25; Order, ECF No. 26.) For the reasons set forth below, the Court will deny the Motion.

### I. *Factual and Procedural Background*

Plaintiffs have alleged predatory and unlawful lending by Defendants. As is relevant for purposes of the current Motion, Plaintiffs manifested assent to certain Borrower Registration Agreements, which authorized Defendant Prosper[2] to act as their attorney-in-fact to sign Promissory Note Agreements once each loan received sufficient funding commitment. (Mem. at

---

[1] The Court consolidated the following actions: Civ. No. JKB-21-0893 (*Jones et al. v. Prosper Marketplace, Inc., et al.*) ("*Jones*"); Civ. No. GJH-21-1126 (*Khan v. Crown Asset Management, LLC*) ("*Khan I*"); Civ. No. GJH-21-1914 (*Khan et al. v. Crown Asset Management, LLC, et al.*) ("*Khan II*"). (Mem. at 10–11.) The lead case, *Jones*, was recently reassigned to the undersigned.

[2] Defendant Prosper Marketplace, Inc. ("PMI"), is a Delaware corporation that offers personal consumer loan services online. (Mem. at 2.) Defendant Prosper Funding, LLC ("PFL"), is a subsidiary of PMI. (*Id.*) Collectively, PMI and PFL will be referred to as "Prosper" in this Memorandum.

1

12, 14–15.) When Plaintiffs accessed the Borrower Registration Agreements, they were also provided with a blank copy of the Promissory Note Agreements. (*Id.* at 14–16.) Both agreements contained arbitration provisions. (*Id.* at 12–16.)

Plaintiffs initially filed all three cases—*Jones*, *Khan I*, and *Khan II*—in state court and Defendants removed the cases to this Court. (*Id.* 4, 6–9.) In *Jones* and *Khan I*, Defendants filed Motions to Compel Arbitration, which Plaintiffs opposed. (*Id.* at 6–8.) In resolving those Motions, the Court concluded that the cases should be consolidated, as the "facts, claims, and pending motions in these three cases are substantively identical." (*Id.* at 10–11.) The Court next concluded that the relevant arbitration agreement provisions delegated questions of arbitrability to an arbitrator. (*Id.* at 16–19.) The Court examined whether an agreement to arbitrate was actually formed and concluded that, while no agreement to arbitrate was formed in the Borrower Registration Agreement, an agreement to arbitrate was formed in the Promissory Note Agreement. (*Id.* at 30–35.)

The Court rejected Plaintiffs' argument that "Prosper's authority to sign the Promissory Note Agreement was in violation of Maryland law" and that, therefore, "the Promissory Note Agreements, and the arbitration agreements within them, were never formed." (*Id.* at 34.) The Court explained that, pursuant to the Maryland Credit Grantor Closed End Credit Provisions ("CLEC"), a loan agreement may not contain "[a] provision by which a person acting on behalf of a holder of the agreement, note, or other evidence of the loan is treated as an agent of the borrower in connection with its formation or execution" and that "any clause or provision in an agreement, note, or other evidence of a loan that is in violation of this subsection shall be unenforceable." (*Id.* (citing Md. Code Ann., Com. Law §§ 12-1023(b)(2)(iv), (b)(4)).) However, the Court found that, by assenting to the Borrower Registration Agreement—a fact Plaintiffs did not dispute—Plaintiffs

2

also authorized Prosper to act as their agents to sign the Promissory Note Agreements, and therefore to bind them to the Promissory Note Agreements. (*Id.* at 33–34.) The Court further concluded that "[w]hether it was legal to do so is a different question—one that the Court cannot adjudicate" and that "[t]he issue of whether the contract violated Maryland law implicates the whole of the underlying contract—not specifically the agreement to arbitrate" and therefore was a question for the arbitrator. (*Id.*) The Court also noted that the arbitration clause specifically reserved any questions of its "validity or enforceability" for an arbitrator. (*Id.* at 35.)

Accordingly, the Court granted the Motions to Compel Arbitration and stayed the consolidated action pursuant to 9 U.S.C. § 3. (*Id.* at 35.) Plaintiffs thereafter filed the instant Motion for Reconsideration.

## II.   Analysis

Plaintiffs' Motion requests that (1) the Court reconsider the Memorandum and Order and deny Defendants' Motions to Compel Arbitration; (2) that the Court certify for appeal a question of law; and/or (3) that the Court reconsider the Memorandum and Order to the extent that it stayed *Khan II*. The Court will deny the Motion.

### A. Reconsideration of Motion to Compel Arbitration

Plaintiffs challenge the Court's conclusion that the issue of whether Prosper could legally act on Plaintiffs' behalf to sign the Promissory Note Agreement was a question for the arbitrator. Plaintiffs argue that this conclusion is clear error, in conflict with *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631 (4th Cir. 2002) and *Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180 (4th Cir. 2022).

Under Federal Rule of Civil Procedure 54(b), a court retains discretion to revise an interlocutory order. Such discretion is "not limitless" and courts can revise an interlocutory order

3

for the following reasons: "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (citation, quotations, and alterations omitted). To qualify under the third prong—the prong Plaintiffs argue applies here—"a prior decision does not qualify . . . by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 258 (4th Cir. 2018) (alterations omitted) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)). Moreover, "where, as here, the order was entered by one judge and then reviewed by another, courts have held that the latter judge should be hesitant to overrule the earlier determination." *Carlson*, 856 F.3d at 325 (citation and quotations omitted). Plaintiffs fail to meet this high bar.

Briefly, "an arbitration provision is severable from the remainder of the contract" and "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). However, "the severability doctrine has been held not to apply when the party seeking to avoid arbitration contends that it never assented in the first place to the contract containing the arbitration provision." *Snowden*, 290 F.3d at 637. In line with *Snowden*, Plaintiffs cite various cases for the proposition that a court—not an arbitrator—must decide questions surrounding whether an agent had authority to sign a contract on a plaintiff's behalf. (Mem. Supp. Recons. Mot., ECF No. 27-1 at 3–5 (gathering cases).)

This case, however, presents a different question than *Snowden* and the other cases cited by Plaintiffs.[3] As *Snowden* explains, it is logical that "if a party never assented to the overall

---

[3] Further, Plaintiffs suggest that the Court's failure to cite *Snowden* is error. (Mem. Supp. Recons. Mot., at 7.) Plaintiffs state that the Court "did not discuss the legal principle that *Prima Paint*'s severability doctrine does not

4

contract containing the arbitration provision, then the party never assented to the arbitration provision." *Snowden*, 290 F.3d at 637. However, unlike those cases cited by Plaintiffs, this is not an instance of an agent assenting to a contract without authorization from a principal. *See, e.g. Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) (explaining that "where a party contends that it has not signed any agreement to arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration" and that "[w]e agree with those circuits which have included claims that the signature is forged or the agent lacked authority to bind the principle in this category"). Here, Plaintiffs do not dispute the Court's prior conclusion that they indeed assented to the Borrower Registration Agreement—which delegated to Prosper the authority to sign the Promissory Note Agreement on their behalf—but rather argue that such delegation of authority was unlawful pursuant to CLEC.

As the Court has already found, that question is for the arbitrator, as the effect of CLEC on the Promissory Note Agreements goes to the validity of those agreements, not whether they were formed. (*See* Mem. at 33–35 (rejecting Plaintiffs' argument that an arbitration agreement was never formed, explaining that Plaintiffs signed the Borrower Registration Agreement, which granted Prosper authority to sign on their behalf, and citing cases for the proposition that it must enforce arbitration agreements even if the underlying contract is invalid or void for illegality)); *see also, e.g.*, *Will-Drill Res., Inc.*, 352 F.3d at 218 ("[W]here parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator").

---

extend to questions of whether an agent had authority to assent to a contract." (*Id.*) This is not true. Although the Court did not cite *Snowden*, it cited a case for the same proposition that Plaintiffs contend the Court did not consider. (*See* Mem. at 34 (citing *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 238 (4th Cir. 2019) for the proposition that a party can challenge the formation of an arbitration agreement by showing that "one party never agreed to the terms of the contract, [or] that a signatory did not possess the authority to commit the principal").)

5

The Court cannot say that this conclusion was clearly erroneous. Plaintiffs do not challenge the Court's finding that they gave Prosper authority to sign the Promissory Note Agreements via their assent to the Borrower Registration Agreements. Further, Maryland law provides that provisions in violation of CLEC are "unenforceable," Md. Code Ann., Com. Law § 12-1023(b)(4), which presupposes the existence of a contract. Accordingly, the Court will not grant the Motion for Reconsideration on this basis.[4]

## B. Certification for Appeal

Plaintiffs also request that the following question be certified for appeal under 28 U.S.C. § 1292(b): "Is it for the court, or an arbitrator, to determine whether it was legal for a person to sign, on behalf of someone else, a contract which contains an arbitration provision?" (Mem. Supp. Recons. Mot. at 9.) Under 28 U.S.C. § 1292(b), the Court may certify an otherwise unappealable interlocutory order for appeal if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Fourth Circuit has "cautioned that § 1292(b) should be used sparingly and thus that its requirements must be strictly

---

[4] Plaintiffs' citation to *Lyons v. PNC Bank, Nat'l Ass'n*, 26 F.4th 180 (4th Cir. 2022) does not alter this conclusion. Plaintiffs cite that case for the proposition that "laws subsisting at the time of the making of a contract enter into and form a part thereof as if expressly referred to or incorporated in its terms." (Mem. Supp. Recons. Mot. at 5 (quoting *Lyons*, 26 F.4th at 189).) That case has little applicability here, as it involved provisions of Dodd-Frank that explicitly prohibited requiring arbitration. Further, as noted, CLEC renders unenforceable a provision that is in violation of CLEC; it does not impact contract formation, and therefore the Court did not clearly err when it found this question was for the arbitrator.

In addition, the additional cases submitted by Plaintiffs in their Notices of Supplemental Authority (none of which are binding on this Court), (ECF Nos. 42, 55), do not alter the Court's conclusion. Those cases involved questions regarding an agent's authority to bind a principal. For example, in *Logan v. Country Oaks Partners, LLC*, 82 Cal. App. 5th 365, 369 (2022), a nephew was appointed as his uncle's agent pursuant to an Advance Directive. The nephew signed an arbitration agreement on behalf of his uncle, but the court found that the nephew did not have the authority to bind his uncle to that agreement, as "the Advance Directive did not confer such broad authority on [the nephew]." *Id.* at 907. Again, here, there is no question that Plaintiffs did actually delegate to Prosper the authority to sign the Promissory Note Agreements via their asset to the Borrower Registration Agreements. Rather, the question—which will be considered by the arbitrator—is whether that delegation of authority was in violation of Maryland law and whether the Promissory Note Agreements are unenforceable.

6

construed." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quotations and citation omitted).

Plaintiffs essentially seek review of "whether the district court properly applied settled law to the facts or evidence of a particular case," which is inappropriate for § 1292(b) review. *Agape Senior Cmty.*, 848 F.3d at 341. Further, granting the Motion would not materially advance the ultimate termination of the litigation. Rather, "[i]f the Court allowed this interlocutory appeal to proceed, the case would have to work its way through the appellate process before the parties could proceed to arbitration, and ultimately, to the conclusion of this litigation." *Stephens v. Wachovia Corp.*, Civ. No. 3:06-246, 2008 WL 1820928, at *4 (W.D.N.C. Apr. 21, 2008). Accordingly, the Court will deny Plaintiffs' request for a certification of this question for appeal.

## C. *Reconsideration of Stay of* Khan II

Plaintiffs also request a reconsideration of the stay as it applies to *Khan II*. (Mem. Supp. Recons. Mot. at 10–14.) As an initial matter, however, the Court must examine whether it has jurisdiction over *Khan II*. *See Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985) (explaining that the court may raise the question of subject matter jurisdiction at any stage of a proceeding). The Court concludes that it does have jurisdiction over *Khan II* and will deny the Motion for reconsideration.

### 1. *Jurisdiction*

As is relevant here, *Jones* and *Khan I* are putative class actions challenging allegedly predatory lending practices. *Khan II* does not purport to be a class action, but rather points to *Jones* and *Khan I*, explains that "Defendants have threatened to compel arbitration of those lawsuits[,]" and seeks (1) an order staying any arbitration proceedings of Jones's and Khan's claims; (2) a declaration that no agreement exists as to Plaintiffs Jones and Kahn to arbitrate

7

arbitrability; and (3) a declaration that Plaintiffs Jones and Khan cannot be compelled to arbitrate. (*See generally Khan II* Am. Compl., ECF No. 9.)

Federal district courts have jurisdiction over civil actions in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332. The parties here are diverse, so the only issue is the amount in controversy. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). In cases involving a motion to stay arbitration, courts have looked to the amount the parties might obtain in arbitration to determine the amount in controversy. *See, e.g., Utopia Studios, Ltd. v. Earth Tech, Inc.*, 607 F. Supp. 2d 443, 446 (E.D.N.Y. 2009) (explaining that, in action seeking a stay of arbitration, "the Court may look to the amount [a party] is seeking in the underlying arbitration to assess whether the amount in controversy requirement is met"); *Getzelman v. Trustwave Holdings, Inc.*, Civ. No. 13-02987-CMA-KMT, 2014 WL 1389957, at *1 (D. Colo. Apr. 8, 2014) ("In cases to compel *or stay* arbitration, a court look[s] through to the possible award resulting from the desired arbitration to determine the amount in controversy." (emphasis added) (citations and quotations omitted)); *G.distributors, LLC v. Scanlon*, Civ. No. 18-02101 (NSR), 2018 WL 6329444, at *4 (S.D.N.Y. Dec. 3, 2018) (explaining that, in a case relating to a petition to stay arbitration, the court looks to the possible award resulting from the arbitration).[5]

---

[5] Plaintiffs argue that "[t]he 'look through' approach Defendants rely upon applies *only* to petitions to compel arbitration under § 4 of the [Federal Arbitration Act ("FAA")]." (ECF No. 54 at 9 (emphasis in original).) While the Court appreciates Plaintiffs' argument that the cases on which Defendants rely relate to petitions to compel arbitration filed pursuant to § 4 of the FAA, Plaintiffs do not address the more general precedent that courts are to look at the "value of the object of the litigation" in determining the amount in controversy in cases involving declaratory or injunctive relief. Plaintiffs appear to argue that, because *Khan II* does not seek monetary relief, it places no amount in controversy. However, as noted above, this is incorrect. *See Hunt*, 432 U.S. at 347.

8

Here, *Khan II* explicitly references *Jones* and *Khan I* and seeks to avoid arbitration in those cases. (*See Khan II* Am. Compl. ¶¶ 4–5 (explaining that "Defendants have threatened to compel arbitration of [*Jones* and *Khan I*]" and challenging the existence of the arbitration agreements); *id.* ¶ 55 (explaining that "[t]his presents an actual, justiciable controversy . . . because Defendants . . . threaten to force Plaintiffs' lawsuits into arbitration").) Therefore, the "object of the litigation" is the relief at issue in *Jones* and *Khan I*, which exceeds the $75,000 threshold. (*See, e.g., Jones* Compl., ECF No. 3 (noting that "Class Representatives demand declaratory judgment and judgment in an aggregated amount for the Class as a whole in excess of $75,000").) Accordingly, the Court concludes that it has jurisdiction over *Khan II*.

### 2. *Reconsideration of Stay*

Having confirmed that it has jurisdiction over *Khan II*, the Court proceeds to the question posed in Plaintiffs' Motion for Reconsideration: whether it was clear error to stay *Khan II* as part of the consolidated action. The Court previously stayed the consolidated action, "pursuant to 9 U.S.C. § 3." (Mem. at 35.) 9 U.S.C. § 3 provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Plaintiffs explain that the stay is error, as "no motion to compel arbitration was filed in *Khan II*, no one requested an [9 U.S.C. § 3] stay in *Khan II*, and *Khan II* is not referable to arbitration." (Mem. Supp. Recons. Mot. at 11.) Plaintiffs also argue that, because there is nothing left to decide in *Khan II*, the Court's prior Memorandum and Order constitute a final, appealable decision. (*Id.* at 11–12.)

9

While Plaintiffs are correct that no motion to compel arbitration was filed in *Khan II* and that no party requested a stay in that case, the decision to stay that case is not clear error. Courts have a broad authority to stay proceedings that "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Being mindful of the standard under which the Court must review a motion for reconsideration, particularly where the order was entered by another judge, *Carlson*, 856 F.3d at 325, Plaintiffs have failed to show that the Court's prior to decision to stay the consolidated cases was in error.

### III. Conclusion

For the foregoing reasons, it is ORDERED that Plaintiffs' Motion for Reconsideration (ECF No. 27) is DENIED.

DATED this 4 day of April, 2023.

BY THE COURT:

James K. Bredar
Chief Judge